MIDEASTERN CONSTRUCTION COMPANY AND WILLIAM G. PRICHARD v. LESLIE W. HAMLETT AND RICHARD HAMLETT

No. 7210SC214

(Filed 29 March 1972)

1. **Appeal and Error § 30— exclusion of evidence — assignments of error**

    An assignment of error that the trial court erred in the exclusion "of evidence of contractual arrangements made with plaintiff, and the matters and things done in their fulfillment," with numerous exceptions numbered seriatim at the end of the assignment, followed by a list of pages of the record, does not comply with Court of Appeals Rules 19(c) and 21.

2. **Appeal and Error § 49— exclusion of evidence — failure of record to show witness' answer**

    The exclusion of testimony cannot be held prejudicial where the record fails to show what the witness would have testified had he been permitted to answer.

3. **Brokers and Factors § 6— commission for acquisition of property — insufficiency of evidence**

    In an action against two individuals to recover a broker's fee which one defendant allegedly agreed to pay plaintiff for the acquisition of property conveyed to a corporation, plaintiff's evidence was insufficient to support recovery against the second defendant upon theories of *quantum meruit,* partnership between defendants, ratification and acceptance of benefits under the first defendant's contract, agency, liability of a promoter for obligations incurred in behalf of a corporation prior to its incorporation, or implied contract.

4. **Brokers and Factors § 6— right to commission for acquisition of property**

    Plaintiff's evidence was sufficient to support recovery against an individual defendant of a broker's fee for the acquisition of property conveyed to a corporation, where it tended to show that plaintiff was the procuring cause of the acquisition of the property and that defendant had agreed to pay plaintiff a specified commission for obtaining the property.

APPEAL by plaintiff William G. Prichard from *Braswell, Judge,* 13 September 1971 Civil Session, Superior Court, WAKE County.

By this action Mideastern Construction Company seeks to recover $480.70, for services rendered defendants as alleged in the complaint in connection with the acquisition of certain property in Wake County, and William G. Prichard seeks to recover the sum of $12,600 allegedly due him by defendants as a real estate broker's fee resulting from the acquisition of the same property. At the conclusion of plaintiffs' evidence, defendants consented to the rendition of judgment against them in favor of Mideastern Construction Company in the amount prayed for with interest thereon from 10 November 1967. Also at the conclusion of plaintiffs' evidence, defendants moved for directed verdicts in their favor as to William G. Prichard. The motions were allowed, and plaintiff Prichard appeals.

*Emanuel and Thompson, by Robert L. Emanuel, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey and Clay, by Robert M. Clay, for defendant appellees.*

MORRIS, Judge.

[1]  Of the 48 exceptions included in plaintiffs' nine assignments of error, 46 are to the exclusion of evidence, for the most part as to Richard Hamlett. Assignment of error No. 1, which is as follows: "The Trial Court erred in the exclusion as to Richard Hamlett of evidence of the contractual arrangements and agreements made with plaintiff, and the matters and things done in their fulfillment, both prior to and subsequent to communications between plaintiff and Richard Hamlett.", includes 27 exceptions. The exceptions are numbered seriatim at the end of the assignment of error. Following the list of exceptions is a list of pages of the record. Each assignment of error including exceptions to rulings on evidence is done in identical fashion. This obviously does not comply with Rule 21 or Rule 19(c), Rules of Practice in the Court of Appeals of North Carolina, nor with requirements of this Court and the Supreme Court. *In re Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59 (1966); *Nye v. Development Co.,* 10 N.C. App. 676, 179 S.E. 2d 795 (1971), cert. denied 278 N.C. 702 (1971). In

order to determine what might have been erroneous in the court's ruling on any one exception, we have had to spend a greater amount of time than warranted in a voyage of discovery through the record. This voyage results in the conclusion that no prejudicial error appears.

[2]  With respect to 12 of the exceptions, the record does not disclose what the witness's answer would have been. There is, therefore, nothing for the Court to consider. *Barringer v. Weathington*, 11 N.C. App. 618, 182 S.E. 2d 239 (1971).

By his assignment of error No. 8, appellant contends that the court erred in denying his motions to reverse and vacate the earlier rulings excluding evidence as to Richard Hamlett. This assignment of error is without merit.

[3]  Appellant's remaining assignment of error is directed to the court's allowing defendants' motions for directed verdict. Appellant concedes that there is no evidence of any agreement between appellant and Richard Hamlett with respect to the payment of commissions for obtaining the land in question. He contends, however, that the evidence would support the submission to the jury of a variety of issues any one of which would establish liability. Appellant argues that the evidence would support an issue on the theory of quantum meruit; on the theory of a partnership between Leslie Hamlett and Richard Hamlett; on the theory that Richard Hamlett assumed, ratified, confirmed and accepted the benefits of the contract entered into between appellant and Leslie Hamlett; on the theory that Leslie Hamlett was acting as agent for his principal, Richard Hamlett; on the theory that Richard Hamlett, as a promoter for Capitol City Development Corporation, is liable for the debts and obligations incurred in its behalf prior to its incorporation; or on the theory of an implied contract. Our study of the record leads us to the conclusion that, viewing the evidence in the light most favorable to the plaintiff, there is insufficient evidence to support the submission of an issue to the jury on any of these theories as to Richard Hamlett. There is no evidence that Richard Hamlett ever authorized anyone to act for him, or that he ever even knew of an agreement between Leslie and appellant.

However, we think appellant's position with respect to Leslie Hamlett is well taken. Appellant testified that in the

early fall of 1967 Leslie Hamlett approached him and asked if he knew of any property which could be developed for apartment projects; that "Raleigh was a very good area to be in and he wished to get started in the area." Appellant took him to the offices of Mr. Richard Bell and Mr. Hal McNeilly, and the four of them rode to Durham to look over some property there. They talked about the Parker property near Raleigh, which was known to Mr. Bell and Mr. McNeilly, and Leslie Hamlett expressed a desire to look at it. An appointment was made, and the same four went to look at it. Appellant testified "As we approached the property and started to turn off the Highway 70 into the property, his first words were 'buy it'." They went back to Richard Bell's office where Leslie Hamlett "said that he would very much like to purchase the property." At that time, a discussion was had as to the price to offer for the property. Also at this time "Mr. Leslie Hamlett suggested a broker's fee for obtaining this property and also a land development fee for land planning of this property, which would be necessary to get a mortgage loan. . . . The land brokerage fee was to be $12,600. The estimated value of the land being purchased was $126,000. The land planning fee was agreed on at $7,000, to be paid to Richard Bell & Associates." Subsequently, Leslie Hamlett asked that the three men accompany him to Roanoke, Virginia, to see some projects of Richard Hamlett and observe how he operated. They did go to Roanoke and visited projects there. During the ensuing week or 10 days, Mr. Leslie Hamlett made numerous telephone calls to Raleigh to determine the progress being made in the purchase of the land. In October Mr. Richard Hamlett came to Raleigh where he met with appellant, Mr. Leslie Hamlett, Richard Bell, Hal McNeilly, Ted Reynolds, and Bob Farmer to discuss the purchase of the property and how to go about making an offer in writing. Subsequent to that meeting, another meeting was had with Mr. Reynolds. This was at night and at the insistence of Leslie Hamlett and was held in Mr. Bell's office. As a result of that meeting, a "night" letter was sent to the owners of the property. The next meeting was at Mr. Reynolds' office on the following day where appellant met with Mr. Reynolds, Mr. Leslie Hamlett, and Mr. Richard Hamlett, and an offer to purchase was drafted. The next meeting was with Mr. Ed Preston, attorney for the sellers. Present were appellant, Richard Hamlett, Leslie Hamlett, and Mr. Preston. Changes were made in the contract. In response to the question by Mr. Preston as

to whether there was a fee to the seller, appellant "answered that there was no fee to the seller that the buyer was taking care of the real estate broker's fee." An option was prepared for a purchase price of $170,000 plus $10,000 for timber "if it proved out to be as much as they said it was." During the option period Leslie Hamlett returned to Raleigh several times and talked with appellant. He discussed with appellant appraisals and apartment surveys to be used in connection with application for a loan. Mr. Leslie Hamlett was in the business of mortgage brokerage, and presented an application for a loan on this property to North Carolina National Bank which was not consummated. The property was acquired and conveyed to Capitol City Corporation, a corporation chartered on or around 10 October 1967, of which Richard Hamlett was president and Leslie Hamlett an officer and director. The deed was dated 10 November 1967. Mr. Richard Hamlett testified, by deposition, that Leslie Hamlett occasionally obtained financing for some of his (Richard's) 19 corporations; and that in this transaction, Leslie Hamlett was interested in acquiring a loan through North Carolina National Bank. "The fact of the matter is that is the reason I got into it. He come to me and says North Carolina National says they will finance ten buildings over there. Will you come down and build them? You buy the land and set it up, use your financial statement, and so forth, if I arrange the financing? I say, well, yes, I would, and so this was his primary interest to secure financing. He was seeking this as an opportunity to make a commission for obtaining financing, and it was understood that I would go ahead and own the corporation and build on it."

[4] From the evidence the jury could find, though it would not be compelled to do so, that there was an agreement between Leslie Hamlett and appellant, and that appellant was the procuring cause of the acquisition of the property. See *Realty Agency, Inc. v. Duckworth and Shelton, Inc.*, 274 N.C. 243, 162 S.E. 2d 486 (1968), and *Marshall v. White*, 245 F. Supp. 514 (W.D.N.C. 1965).

Affirmed as to Richard Hamlett.

New trial as to Leslie Hamlett.

Chief Judge MALLARD and Judge PARKER concur.