Alexander P. MARSHALL, t/d/b/a F. E. Lucas Company, Plaintiff,

v.

Henry WHITE, Individually, and W & B Motel Enterprises, Inc., Defendants.

Civ. No. 2218.

United States District Court W. D. North Carolina, Asheville Division.

Sept. 7, 1965.

Thomas A. Uzzell, Asheville, N. C., and J. Archie Cannon, Greensboro, N. C., for plaintiff.

Harold K. Bennett, Asheville, N. C., for defendants.

CRAVEN, Chief Judge.

This case was tried at Asheville, North Carolina, on May 3, 1965. Decision was delayed at the request of counsel until a transcript of the proceedings could be prepared and to permit the preparation and filing of briefs.

Plaintiff Alexander P. Marshall is a real estate broker whose principal office is in the District of Columbia. He is licensed as a realtor in North Carolina and in other states. His specialty is leasing and selling motels and hotels.

The defendant Henry White calls himself a developer. In April–May 1962 White resided at Morehead City, North Carolina, and owned the Buccaneer Hotel near there. Marshall went to see White at White's office in Morehead City to discuss the possible sale of the Buccaneer. Until this occasion, Marshall and White were not acquainted with each other. In response from inquiry made by Marshall, White disclosed to him that he was planning to build a motel in Jacksonville and considering one in Asheville and that the Buccaneer was for sale at a given price. At this time White did not request Marshall to obtain tenants for any of his motels.

About the fifth day of July, 1962, White telephoned Marshall and outlined

to him two Horne deals, one at Jacksonville, North Carolina, and one to be put together at Asheville, North Carolina. White asked Marshall to help him find a tenant for Jacksonville and for Asheville. Marshall immediately mentioned Mr. Gilbert Winkenwerder as a possibility. Marshall became acquainted with the late Gilbert Winkenwerder in 1949 and dealt with him in business on numerous occasions over many years. Mr. Winkenwerder, until his death, was interested in the operation, construction, and leasing of motels. The name was not familiar to White, and Mr. Marshall spelled it to him. White described—to the extent possible—the projected motel at Asheville, North Carolina. It was to contain 108, or 112, or possibly 120 units, depending upon various factors including the effectiveness of grading work that would have to be done to level the hilly area. In this telephone conversation a proposed rental of $110,000.00 per annum was mentioned. Something was said in the conversation about furnishing the motel, but it is impossible from this evidence to determine precisely what was said. In any event, the evidence is not sufficient to support a finding, and I fail and refuse to make one, that there was any agreement with respect to whether owner or tenant was to equip the motel with furniture.

Nothing was said in this conversation or subsequently, or in any subsequent correspondence, about the commission, if any, that would be payable to Marshall. The only evidence with respect to commission is Marshall's testimony that it is customary in the business for the commission to be five percent (5%) of the annual rental payment, to continue as long as does the lease.

Marshall had nothing to do with the subsequent transaction except that he introduced White to Gilbert Winkenwerder. He did not go to Asheville, nor did he participate in any negotiations between White and Winkenwerder and/or the tenants.

On October 15, 1962, Marshall wrote to White: "As you know, I brought you Mr. Winkenwerder as a client and expect you to recognize me as the broker in this deal or any other deals you arrange with the Winkenwerders." (Defendant's Exhibit No. 1) White responded immediately under date of October 17: "This is to advise you that I am cancelling all negotiations with Mr. Winkenwerder and you, as I do not desire to deal with you as a broker."

The remaining narrative of events is, briefly, as follows:

Gilbert Winkenwerder introduced his adult sons, William and Richard, to White. Winnett Corporation was formed and owned by the two Winkenwerder sons and N. C. W. Gennett and Andrew Gennett. Gilbert Winkenwerder was an original incorporator, but invested no money in the company and received no stock. On July 16, 1962, W & B Enterprises, controlled by White, obtained an option from Piney Mountain Properties, Inc. for the tract of land on Tunnel Road, Asheville, North Carolina, which became the site of the motel. Winnett, Inc. was incorporated effective December 17, 1962. Around Christmas, 1962, W & B Enterprises exercised the option and took a deed for the land from Piney Mountain Properties, Inc. Thereafter, a franchise was obtained by W & B Enterprises, Inc. from Horne's Motel Lodge and from Horne's Enterprises, Inc., operators of the well-known restaurant chain.

On January 25, 1963, a lease was entered into between W & B Enterprises, Inc. and Winnett, Inc. whereby Winnett leased the motel property separate from the restaurant property) for a term of fifteen years at an annual rental of $108,000.00. Winnett, as tenant, agreed to furnish the 120 room motel in a manner to be approved by W & B at an approximate cost of $80,000.00 to $90,000.00, such furnishings to become the property of landlord. The lease itself (Plaintiff's Exhibit No. 4) is a

nineteen page carefully prepared document.

The nationally known Horne's franchise was of considerable importance to the parties in the negotiation of the lease. The evidence does not disclose who was responsible for obtaining it, but Marshall had nothing to do with the obtaining of the Horne franchise.

By way of summary, according to the evidence, Mr. Gilbert Winkenwerder's part in the entire transaction was simply that of advisor to his sons. He was an accommodation endorser for the benefit of his sons on a note given to bind the contract. Mr. William Winkenwerder testified, without contradiction, that he had never heard of Marshall until the lawsuit was filed. None of the evidence tends to show that Marshall ever talked with any of the stockholders and/or officers of Winnett.

This is a hard case. But for Marshall's having put White and Gilbert Winkenwerder together, White might well have never met or heard of the Gennetts and the sons of Winkenwerder. When Marshall introduced Gilbert Winkenwerder and White, he clearly made for White a contact that proved to be subsequently valuable. But that is all that can be inferred from the evidence. And it is not enough.

■ The term "procuring cause", as used in describing a broker's activity, means more than "but for" causation. It refers to a cause originating a series of events which, without break in their continuity, result in accomplishment of the prime objective of employment of the broker, which usually consists of procuring a purchaser ready, willing, and able to buy property on the owner's terms or of effecting a sale. 12 Am.Jur.2d "Brokers" Section 190. The final transaction between Winnett and W & B was negotiated and concluded by White without the aid of Marshall. I conclude as a matter of law that Marshall was not the procuring cause of the obtaining of the leasehold agreement.

Marshall's prospect was Gilbert Winkenwerder, who was unable to rent the property individually. It has been held that under such circumstances, when, thereafter, without the intervention of the broker, the property is sold to a syndicate of which the prospect was a member at the time of the broker's negotiation, the broker is not entitled to compensation. 12 Am.Jur.2d "Brokers" Section 191.

■ But Marshall may not recover for an even more fundamental reason. The oral agreement made by telephone between Marshall and White is too vague and indefinite to be enforceable. The parties were at that time (July) talking about a prospective development which was not to take on shape and substance until some six months later at the very earliest. The exact size of the motel was unknown. Even its location was not certain. Whether a franchise could be and would be obtained from Horne was conjectural. No agreement was reached about furnishings, which subsequently turned out to be an $80,000.00 or $90,000.00 item. As the Fourth Circuit said in Jackson v. Northwestern Mutual Life Insurance Co., 133 F.2d 111: "The law is abundantly clear that although (Marshall) was interested in the sale of the property and had a finger in the pie, his preliminary efforts do not rise to the dignity of an enforceable contract." This is true of Marshall's activity. He brought in Gilbert Winkenwerder, who subsequently brought in his sons, who brought in the Gennetts, who formed Winnett Corporation, which company signed the lease.

"[I]t matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very

seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors." Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 385, 38 Am.Rep. 441, quoted by Judge Dobie in Jackson v. Northwestern Mutual Life Insurance Co., supra 133 F.2d at 114, as being the law of North Carolina.

"It is well settled law that the owner of real estate may revoke a broker's authority to sell his real estate, or to lease it, at any time prior to the procurement of a prospective purchaser or lessee, provided there is no time limit fixed in the agreement, and the revocation is made in good faith." Bolich-Hall Realty & Insurance Co. v. Disher, 225 N.C. 345, 34 S.E.2d 200 at 201.

If it be assumed, and it is held to the contrary, that the telephone conversation between White and Marshall was sufficiently definite and certain to constitute a contract to employ Marshall as broker to rent the premises, it is nevertheless clear that on October 17, 1962, White revoked any such contract and terminated the relationship. At the time of his revocation, Marshall had no prospective purchaser or lessee ready, willing, and able to pay White $110,-00.00 per annum to rent the projected property. Never did Marshall produce a lessee ready, willing, and able to pay $110,000.00 per annum for any term of years—much less fifteen.

By way of summary, it is concluded as a matter of law that:

1. There was no oral contract between Marshall and White sufficiently definite to be enforceable.

2. If there was such a contract, Marshall's authority under it was revoked effective October 17, 1962, prior to the procurement of a prospective lessee ready, willing, and able to perform.

3. Marshall was not the procuring cause of the lease obtained and never procured a lessee ready, willing, and able to pay $110,000.00 per annum for the rental of the premises.

It is adjudged that Marshall is entitled to recover of the defendant nothing, and an appropriate judgment will be entered to that effect.