409 P.2d 714

Cecilia B. ALIRES, Administratrix of the Estates of David Alires, Steve Atencio, Sofie Alires and Michael Alires, Appellant,

v.

SOUTHERN PACIFIC COMPANY, a corporation, Carl W. DePrist and Belton E. Hodges, Appellees.

SOUTHERN PACIFIC COMPANY, a corporation, Carl W. DePrist and Belton E. Hodges, Appellants,

v.

Cecilia B. ALIRES, Administratrix of the Estates of David Alires, Steve Atencio, Clara Alires, Bobby Alires, Sofie Alires and Michael Alires, all deceased; and Cecilia B. Alires, Guardian of the Estate of Crucita Alires, a minor, Appellee.

Nos. 8493, 8550.

Supreme Court of Arizona.

En Banc.

Jan. 14, 1966.

Moore, Romley, Kaplan, Robbins & Green, by Elias M. Romley, Donald R. Wilson, Phoenix, for appellant and appellee Cecilia B. Alires.

Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellees and appellants Southern Pacific Co., Carl W. De Prist, and Belton E. Hodges.

LOCKWOOD, Justice.

This is a combined wrongful death and personal injury action wherein damages were sought for the deaths of the five adults and four children and serious permanent injuries sustained by an infant. All of the decedents as well as the surviving injured child were passengers in an automobile which was involved in a collision with the Southern Pacific Golden State Limited passenger train at the 35th Avenue crossing in Phoenix at 11:50 P.M, on December 16, 1956.

The case was first tried in 1958 resulting in verdicts and judgments in favor of the defendant railroad company and its engineer and fireman. Plaintiff appealed the judgment which was reversed with an order for a new trial. Alires v. Southern Pacific Company, 93 Ariz. 97, 378 P.2d 913 (1963).

A second trial commencing on March 20, 1964 was had to a jury. The jury returned verdicts in favor of the defendants for the deaths of Juan C. Alires, Juan A. Alires, and Victor Alires. These were the only adult male passengers for whose wrongful deaths the action was brought. The jury further returned verdicts in favor of the plaintiff and against defendants as follows:

A. For the death of David Alires, a child, $37,500.00

B. For the death of Steve Atencio, a child, $37,500.00

C. For the death of Clara Alires, an adult, $15,000.00

D. For the death of Bobby Alires, an infant, $5,000.00

E. For the death of Sofie Alires, an adult, $150,000.00

F. For the death of Michael Alires, an infant, $30,000.00
and

G. For the personal injuries to Crucita Alires, an infant, $100,000.00.

Judgment was entered pursuant to the verdicts on March 30, 1964. The defendants' motion for judgment N.O.V. was denied. Defendants' motion for new trial was also denied as to all issues bearing upon liability, but the court ordered remittiturs as to the amounts of the jury verdicts for

the deaths of David, Steve, Michael and Sofie, or in the alternative a new trial on the issue of damages only.

The court ordered the following remittiturs:

A.  Sofie Alires, $75,000.00

B.  Michael Alires, $20,000.00

C.  David Alires, $17,500.00

D.  Steve Atencio, $17,500.00.

Cecilia B. Alires (Administratrix of the Estates of David Alires, Steve Atencio, Clara Alires, Bobby Alires, Sofie Alires and Michael Alires, all deceased; and Cecilia B. Alires, as Guardian of the Estate of Crucita Alires, a minor,) appeals from that part of the court's order granting a new trial on the issue of damages unless the order of remittitur was complied with. Defendants appeal from the judgment and the court's denial of their motion for judgment N.O.V. and motion for new trial.

On this appeal the defendants present the following issues:

(1)  That the evidence failed to show any act or omission of the defendants which proximately caused the collision and that the evidence showed that the sole proximate cause of the collision was the negligence of the driver of the automobile in failing to see and hear the defendants' train and heed its warning;

(2)  That there was no evidence justifying the instruction of the court with regard to negligence predicated upon alleged failure of the defendants to give statutory whistle and bell warnings;

(3)  That the court erred in denying defendants' motion for a new trial for the reason that the verdicts in favor of the decedent female adults were inconsistent with the verdicts against the decedent male adults.

The facts presented to the jury on the second trial were substantially the same as those presented to the jury on the first trial and are set forth in Alires v. Southern Pacific Company et al., supra.

In addition to the facts set forth in the original Alires opinion the following facts have a bearing on the decision in this case.

Defendant Belton E. Hodges, the fireman on the train, testified that throughout the desert run of one hundred seventy miles from Yuma to Phoenix the speed was at no time more than seventy-nine miles an hour, which was the speed at which the train was traveling as it entered the Thirty-fifth Avenue crossing. The speed of seventy-nine miles per hour at the Thirty-fifth Avenue crossing was pursuant to instructions given by the defendant Southern Pacific Company. There were lights around the Reynolds Aluminum Plant, and that as the train approached the crossing there was the glare of the lights of the City of Phoenix as well as the aluminum plant.

lights and street lights. Hodges testified there were "just a maze of lights coming from that direction."

The fireman, sitting on the left side of the train, testified that it was his duty to look both ways as the train approached a crossing. He said he never saw the southbound vehicle involved in this action. Instead, he said he was watching two northbound vehicles, approaching from the engineer's side of the train, which

"* * * I thought it might be close enough to be struck by—by the engine, after we got close enough to it."

Hodges stated that the first northbound vehicle was approximately one hundred feet or more in front of the train when it crossed the tracks and the second northbound vehicle crossed about fifty feet in front of the train.

Defendant Hodges also testified as follows:

"Q. Now, sir, as you approached that crossing, you knew that was a bad crossing, didn't you?

"A. I knew that it was a bad crossing, in the respect that the automobiles take—let's see, how would you say, extra chances there than they do at other crossings, yes, sir.

$$* \quad * \quad * \quad * \quad * \quad *$$

"Q. I say, you knew the night of this accident that because people were crossing there, it was a dangerous crossing?

"A. Yes, sir, I would say that.

"Q. You knew there were shifts changing at about midnight, didn't you?

"A. Well, I didn't know. I just imagined there was. As I say, I don't know anything about this aluminum plant, and that's what I assumed, that there were people at that time using the crossing, yes, sir."

Defendant Hodges further testified that when he referred to the crossing as a "bad crossing" he meant

"* * * near midnight the employees of that Reynolds Aluminum Plant are changing shifts there and they are going to and from work, and at that particular time I considered it a bad crossing."

The Southern Pacific Company's claims investigator, Leo Sizemore, testified that after the accident the warning signs for the traveling public were changed to automatic signals, or electric signals, at the Thirty-fifth Avenue crossing. Sizemore testified that the crossbuck sign protecting the Thirty-fifth Avenue crossing before the accident was the same kind of sign the Southern Pacific Company used out in the middle of the desert between Phoenix and Yuma, and that he didn't know of any signs used by the

railroad that were smaller than the one used at this crossing at the time of the accident.

There was further testimony that the train speed limit at this particular crossing was reduced shortly after the accident from seventy-nine miles per hour to forty miles per hour.

Defendants' witness, Vandergriff, testified that he used this particular crossing every night on his way to work at the Reynolds plant and that he usually heard a train about the same time every night. Vandergriff stated that he never heard the train that night until after he "topped the crossing" and that he was about fifty feet north of the tracks when the train's whistle was blown for the first time. The vehicle in which the Alires family was riding was likewise approximately fifty feet north of the tracks as it passed him (Vandergriff) going south. It was not going too fast, it was on its own side of the road and there was nothing unusual about the way the car was being driven.

Mr. Vandergriff testified that at the time of the accident:

"A. Yes, that's all they had then, just two crossed sticks that says, 'Railroad Crossing'."

When asked about the crossbuck sign, Vandergriff stated:

"A. Well, you couldn't tell too good until you got awful close to them lessen you knew the railroad was there.

"Q. In other words, unless you knew that railroad was there, you could barely see those signs at night until you almost got on top of them, isn't that correct?

"A. Right."

Defendants' witness Amanuel Bennight was a passenger in the Vandergriff car. He testified that he did not hear the train until after they crossed the tracks, that the crossbuck sign was not reflectorized, and the "two sticks" constituting the crossbuck sign were practically impossible to see on a dark night, until "you were almost right on top" of the sign.

Harold Smith DeWitt, a police sergeant for the City of Phoenix, who qualified as an expert in the field of accident investigation, speed computation, stopping distances, and reaction times, testified that a car traveling thirty-five miles per hour (the legal speed limit), or even thirty miles per hour, could not be brought to a halt in fifty feet.

Where applicable, our decision on the prior appeal of this case is binding on this Court on this appeal, because the facts revealed in the second trial are substantially the same as those considered on the preceding appeal. All questions adjudicated

therein are the law of the case on this appeal. Beliak v. Plants, 93 Ariz. 266, 379 P. 2d 976 (1963). The determination in the prior appeal is res judicata. Snyder v. Pima County, 6 Ariz. 41, 53 P. 6 (1898); Menager v. Farrell, 6 Ariz. 316, 57 P. 607 (1899).

In our decision on the prior appeal we held that the jury could have found that the defendants were negligent in, for example, operating the train at a high and dangerous rate of speed; that the defendants recognized and knew the extra hazardous nature of the crossing; that the defendants failed to provide adequate warning devices; that those in charge of the train had knowledge that the particular crossing was a bad crossing. We held that there was sufficient evidence for the jury to determine that the defendants' conduct reached the level of wantonness. We also held that there was sufficient evidence upon which the jury could find the defendants negligent, and that the trial court properly instructed the jury on the question of proximate cause relating to the possible negligence of defendants.

Apparently during the second trial the jury found the defendants negligent and that the defendants' negligence proximately caused the death and injuries of all but the male passengers in the vehicle.

The defendants claim that the trial court erred in giving the following instruction

"The law of the State of Arizona provides that a person in charge of a railroad locomotive before crossing any traveled public way shall cause either the bell to ring or a whistle, siren or other sounding device to sound at a distance of at least one-quarter mile from a crossing and until it is reached.

"The aforementioned law with respect to the warning to be given of the approach of a train to a public crossing does not prescribe the extent of the duty of a railroad company as to warning. It prescribes merely the minimum that must be done.

"You are instructed that a violation of the law which I have just read to you would constitute negligence as a matter of law. In other words, proof of a violation of that law is in itself proof that the defendants were negligent. I instruct you that if you find from the evidence in this case that the defendants violated the provision of the law that I have just read to you, then they were guilty of negligence."

Defendants claim that this instruction erroneously permitted the jury to find that the defendants failed to comply with the requirements of A.R.S. § 40-854 which requires that a person in charge of a railroad locomotive must before crossing any traveled public way "cause the bell to ring or a whistle, siren or other sounding device to sound at a distance of at least eighty rods

from a crossing and until it is reached * * *." They urge that the testimony of the engineer and the fireman, both defendants herein, established that the whistle and the bell were sounded for the prescribed distance, and that it was incorrect to found an instruction on the testimony of a series of witnesses who said that they did not hear any warning signals until it was too late for the vehicle to stop and avoid the accident. The defendants claim that this negative testimony—not hearing a whistle or a bell—had no evidentiary value.

■■■ Such testimony, when it is coupled with a sufficient predicate, consisting of additional testimony or circumstances, to show that the witness' position and attitude of attention was such that he would probably have heard or seen the occurrence of the event had it happened, is relevant and will support a finding. Southern Pacific Company v. Cavallo, 84 Ariz. 24, 323 P.2d 1 (1958); Davis v. Boggs, 22 Ariz. 497, 199 P. 116 (1921). See Udall, Arizona Law of Evidence, § 112, p. 211. Here the testimony of the disinterested witnesses Vandergriff and Bennight called by the defendants, to the effect that they did not hear any warning signals until they had "topped the crossing" and until after they had crossed the tracks; and that they were only about fifty feet north of the tracks when the train's whistle was blown for the first time, was the equivalent of positive evidence of a negative fact—that the signal was not given. The court did not err in giving the instruction complained of.

The defendants' third claim of error is based on the fact that the jury denied the claims for the deaths of the three male adults in the car, Juan A. Alires, Juan C. Alires and Victor Alires (the driver John Massey not being the subject of any claim) whereas the jury allowed recovery with regard to the claims of the two deceased adult women. Defendants urge that these two sets of verdicts involving the deaths of the adults were inconsistent and therefore a new trial should have been granted.

The court in the instant case instructed the jury:

"* * * [I]t is the law that a person who rides in an automobile with an intoxicated driver is guilty of negligence if he knows or ought to know that the driver is intoxicated, * * *."

■■■ As we said in our prior opinion: "It is the established law of this state that the burden of proof of a plaintiff's contributory negligence is upon the defendant."

Based on the record of this trial it is reasonable to assume that the jury found that the defendants carried the burden of proof on the question of the intoxication of the driver and the knowledge thereof by the male adult passengers but that they did not carry that burden with regard to the female adult passengers.

**14**

On the motion for a new trial the judge ordered, with regard to four of the decedents, remittiturs or in the alternative a new trial. The plaintiffs have appealed from that order.

 The trial judge by his order of remittiturs approved the verdict as to liability. Boies v. Cole, 99 Ariz. 198, 407 P. 2d 917 (1965). With this approval of the jury's verdict as to liability by the trial court we concur. By ordering a reduction in damages instead of setting aside the verdicts, the trial judge determined that the verdict was not the result of passion or prejudice. See Young Candy & Tobacco Co. v. Montoya, 91 Ariz. 363, 372 P.2d 703 (1962) and the cases cited therein.

We have examined the record in this case and find that the trial court did not exceed its judicial discretion in finding that the damages ordered by the jury were excessive. After properly exercising this discretion the trial court had the power, where the motion for a new trial was based upon this ground, to order a remittitur or in the alternative a new trial on the question of damages awarded to Sofie Alires, Michael Alires, David Alires, and Steve Atencio.

Judgment affirmed.

STRUCKMEYER, C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concur.