675 P.2d 1347

Legesse **MAMMO**, surviving father of Messeret Mammo, a deceased minor, Plaintiff-Appellee/Cross-Appellant,

v.

**STATE of Arizona and Department of Economic Security**, Defendants-Appellants/Cross-Appellees.

No. 1 CA–CIV 5781.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 4, 1983.

Review Denied Jan. 24, 1984.

Langerman, Begam, Lewis & Marks by Stanley Marks, Noel Fidel, Elliot Wolfe, Phoenix, for plaintiff-appellee/cross-appellant.

Winston & Strawn by Arthur P. Greenfield, Richard W. Shapiro, Phoenix, for defendants-appellants/cross-appellees.

## OPINION

FROEB, Judge.

In this wrongful death action, appellee, Legesse Mammo, recovered a $1,000,000 jury verdict against appellants, State of Arizona and the Department of Economic Security (DES), for the death of his minor daughter, Messeret Mammo. An order was later entered by the trial court remitting the verdict to $300,000. The State and DES appeal from the judgment and Mammo cross-appeals from the order granting the remittitur.

The issues on appeal include whether the trial court had subject matter jurisdiction, whether appellants could be liable for Messeret Mammo's death, whether a new trial

should have been granted, and whether the amount of the judgment is appropriate.

Viewing the evidence and inferences to be drawn therefrom in a light most favorable to upholding the judgment, *Gann v. Morris*, 122 Ariz. 517, 596 P.2d 43 (App. 1979), the undisputed facts are as follows. Appellee married Barbara Mammo in 1967 and was divorced from her in 1976. The marriage produced three children, Sirgute, Tamiru and Messeret, custody of whom was awarded to Barbara Mammo. Appellee was granted weekly visitation, which he exercised one day each weekend. He normally would visit with Messeret for only a short time at her mother's home because of her young age and would keep the two older children for a whole day.

Over the course of two weekends in late June and early July of 1977, appellee observed bruises on the bodies of the two older children. He learned from Tamiru that all three children had been beaten by their mother and her live-in boyfriend. Appellee became concerned for Messeret, whom he had not been allowed to see for the past two weeks. Appellee took the two older children and reported his fears and concern for Messeret's immediate well-being to the police. The investigating officer relayed appellee's allegations to DES and told appellee to retain custody of the two older children. A DES agent was to call him the next day.

The following day, appellee called DES himself and spoke with an intake unit supervisor for Child Protective Services. DES took no action except to recommend that appellee retain an attorney to contest Barbara's custody of the children.

Appellee did consult with an attorney, which resulted in an action being immediately filed to restrain Barbara Mammo from exercising custody over the children. Messeret Mammo, however, remained in her mother's custody. Barbara Mammo did not appear for the July 15, 1977, hearing. Her counsel advised the court that she and Messeret were on a vacation in the East. The hearing was reset for July 28, 1977.

Messeret Mammo died on July 24, 1977, the victim of an apparent homicide. On June 22, 1979, appellee filed a claim with DES for the wrongful death of Messeret as a result of DES's negligence and breach of its duties. The notice of claim specified that suit would be filed against the State if no response was received within fifteen days. No action was taken on the claim and appellee filed suit against appellants on July 16, 1979.

■ Following trial, the jury returned its verdict in favor of appellee for $1,000,000. The trial court granted a remittitur reducing the recovery to $300,000 which appellee accepted. When appellants filed their appeal, appellee was entitled to cross-appeal and, by doing so, his consent to the remittitur was thereby deemed revoked. Rule 59(i)2, Arizona Rules of Civil Procedure.

■ Appellants' first argument is that appellee failed to comply with the notice of claims statute, A.R.S. § 12–821, and therefore the trial court was without subject matter jurisdiction. A.R.S. § 12–821 requires presentation of a claim and disallowance before suit may be brought against the state. *See Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977); *Dassinger v. Oden*, 124 Ariz. 551, 606 P.2d 41 (App.1979); *State v. Brooks*, 23 Ariz.App. 463, 534 P.2d 271 (1975). It is undisputed that appellee made a proper claim in accordance with A.R.S. § 12–821. It is also undisputed that DES did not disallow the claim prior to suit. Appellants claim the failure to do so denied the trial court of subject matter jurisdiction.

■ Although appellants failed to raise it below, the issue is properly before us since subject matter jurisdiction may be raised at any time and is never waived. *Hughes Aircraft Co. v. Industrial Commission*, 125 Ariz. 1, 606 P.2d 819 (App. 1979).

■ Appellee offers two arguments in response. First, he urges that appellants' answer to the merits of his suit amounted

to a constructive disallowance of his claim. Alternatively, appellee urges us to adopt the rule in California which holds that disallowance is not a jurisdictional prerequisite. *See Petersen v. City of Vallejo,* 259 Cal.App.2d 757, 66 Cal.Rptr. 776 (1968); *Cory v. City of Huntington Beach,* 43 Cal.App.3d 131, 117 Cal.Rptr. 475 (1974). Because we agree with appellee's first argument, we do not reach the latter.

Appellee correctly points out that because there is no tolling provision contained in A.R.S. § 12–821, the state could effectively bar all claims simply by refusing to act until after the applicable statute of limitations has run. We do not think the legislature intended such a result.

■ The purpose behind A.R.S. § 12–821 is threefold: (1) to afford the agency the opportunity to investigate the claim and assess its liability; (2) to afford the agency the opportunity to attain a settlement and avoid costly litigation; and (3) to advise the legislature where settlement could not be achieved. *State v. Brooks.*

The statute does not provide when the state must act upon a claim which has been filed. Since it does not, we do not think the absence of disallowance can have jurisdictional significance, although it may afford the state a ground to stay the suit for a reasonable time until the claim can be reviewed. We hold that the superior court has jurisdiction any time after the notice of claim is filed. When, as here, appellants filed their answer to the complaint, the claim is constructively denied and the case may proceed. Although there is language in *Grimm v. Arizona Board of Pardons and Paroles* referring to "disallowance" as a jurisdictional prerequisite to suit, "disallowance" was not an issue in the case and we do not believe the decision stands for that principle. *State v. Brooks* is in the same category. On the other hand, the notion of constructive disallowance seems to have been adopted by the Arizona Supreme Court in *State v. Superior Court,* 123 Ariz. 324, 599 P.2d 777 (1979), *overruled on other grounds, State v. Gunnison,* 127 Ariz. 110, 113, 618 P.2d 604, 607 (1980).

Appellants next argue that appellee's claim is not actionable under the test set forth in *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969) for governmental tort liability. *Massengill* established the rule that a breach of duty by the government owed to the public is not actionable unless the conduct involved gave rise to a special relationship which narrowed the public duty to a private duty owed to the plaintiff. Appellants suggest that applying this test, they cannot be held liable on appellee's claim.[1]

■ We hold the trial court correctly determined that a duty arose on the part of DES to act with reasonable care when it received information from appellee concerning the threatened child. The duty emerges from A.R.S. § 8–546.01, which states, in part:

A. Protective services workers shall be employed by the state department of economic security.

B. The department may cooperate with county agencies and community social services agencies to achieve the purposes of this section.

C. A protective services worker shall:

1. Be prepared to receive reports of dependent, abused or abandoned children and be prepared to provide temporary foster care for such children on a twenty-four hour basis.

2. Receive from any source oral or written information regarding a child who may be in need of protective services. A worker shall not interview a child without the prior written consent of the par-

---

1. We are aware of the decision of the Arizona Supreme Court in *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982), filed after briefing in this appeal, in which the Arizona Supreme Court overruled *Massengill* and adopted a different test for determining the duty owed by the state. Neither side has urged this court at oral argument to apply *Ryan* to this case. By deciding this appeal under *Massengill,* under which the case was tried, we do not decide the prospective or retroactive application of *Ryan.*

ent, guardian or custodian of the child unless:

(a) The child initiates contact with the worker.

(b) The child interviewed is the subject of or the sibling of or living with the child who is the subject of an abuse or abandonment investigation pursuant to paragraph 3, subdivision (b) of this subsection.

3. After receipt and initial screening pursuant to regulations promulgated by the department under title 41, chapter 6, article 1 of any report or information pursuant to paragraph 1 or 2 of this subsection *immediately:*

(a) Notify the municipal or county law enforcement agency; and

(b) *Make a prompt and thorough investigation of the nature, extent and cause of any condition which would tend to support or refute the allegation that the child should be adjudicated dependent and the name, age and condition of other children in the home.*

4. Take a child into temporary custody as provided in § 8–223. Law enforcement officers shall cooperate with the department to remove a child from the custody of his parents, guardian or custodian when necessary. (emphasis added)

Appellants do not strenuously contend that they had no duty to act, but say that their duty was one owed to the general public and not to an individual. *Massengill v. Yuma County.* We disagree. The statute in question is quite specific and sets forth duties on the part of protective services workers which are clearly for the protection of threatened individuals. *See Oleszczuk v. State,* 124 Ariz. 373, 604 P.2d 637 (1979); *State v. Superior Court.* Messeret was individually identified to the agency charged with her protection and a relationship emerged between her and the state so that the failure on the part of DES employees to perform their duty worked a special injury to her. *Cady v. State,* 129 Ariz. 258, 630 P.2d 554 (1981). Because a duty arose on the part of appellants to act for the protection of Messeret Mammo, this matter was properly submitted to the jury.

Appellants' third issue is that the trial court improperly denied their motion for new trial. They argue that (1) the jury verdict was the result of passion or prejudice, and (2) the trial court made improper evidentiary rulings.

The basis of appellants' claim of passion or prejudice is that the verdict was in excess of the amount demanded and that the jury only deliberated for one hour before returning its verdict. With respect to the first point, we note that, with the exception of judgments by default, a final judgment shall grant the relief to which a party is entitled, even if it exceeds the demand. Rule 54(d), Arizona Rules of Civil Procedure. In this case, the complaint prays for $250,000 for Messeret's wrongful death. The fact that the trial court reduced the verdict to $300,000 indicates that the court decided that the verdict was excessive. It also indicates, however, that the court determined that the verdict was *not* a result of passion or prejudice. *Howard P. Foley Co. v. Harris,* 10 Ariz.App. 78, 456 P.2d 398 (1969); *Alires v. Southern Pacific Co.,* 100 Ariz. 6, 409 P.2d 714 (1966). Otherwise, the court would have set the verdict aside and granted a new trial. *See City of Scottsdale v. Kokaska,* 17 Ariz.App. 120, 495 P.2d 1327 (1972).

■ The test for whether the jury award is the result of passion or prejudice is whether the amount of the jury verdict is so unreasonable and outrageous as to shock the conscience. *Stallcup v. Rathbun,* 76 Ariz. 63, 258 P.2d 821 (1953). Viewing the evidence in this case in the light most favorable to sustaining the verdict, we are unable to say that the trial court erred in deciding the verdict was not the result of passion or prejudice. Broad discretion is vested in the trial court in regard to the adequacy of a verdict. *Creamer v. Troiano,* 108 Ariz. 573, 503 P.2d 794 (1972). We find no error by the trial court in the exercise of that discretion.

■ With respect to the second point, we conclude that the length of the jury's deliberation in this case does not compel the conclusion that the jury's verdict was the result of passion or prejudice. *See Stallcup v. Rathbun.*

■ We turn next to appellants' argument that improper evidentiary rulings by the trial court mandate a new trial. Appellants first contend that appellee's witness, the attorney in the custody proceedings, should not have been allowed to relate statements of the Mammo children in which they described the manner in which they received their bruises. The trial court permitted the testimony under rule 803(3), Arizona Rules of Evidence, as an exception to the hearsay rule. Later, the same information formed the basis of an affidavit prepared by appellee's attorney which also was admitted into evidence over objection by appellants.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Rules of Evidence. The evidence objected to above was not offered to prove the matter asserted and is therefore not hearsay. We agree with appellee that this evidence was admissible to show that had DES conducted a further investigation into appellee's claim, it would have discovered a situation that warranted intervention and have prevented Messeret's death. Whether the children's statements were true or false is irrelevant for this purpose. It is enough that their content tends to show the cause-effect relationship between DES' failure to investigate, and Messeret's death. Once it is determined that the evidence was not improperly admitted, the affidavit in question was merely cumulative and not grounds for reversal. It is unnecessary to determine if the evidence was admissible under rule 803(3), Rules of Evidence. We will sustain the trial court if it was correct even if the specific reason given is erroneous. *Riffle v. Robert L. Parker Company,* 19 Ariz.App. 100, 505 P.2d 268 (1973). We find no error.

■ Appellants next contend that the trial court improperly admitted hearsay evidence to establish that appellee was a "good father." Even assuming this evidence was improperly admitted, it is not of a prejudicial nature requiring a new trial. *See Sears Roebuck and Co. v. Jackson,* 21 Ariz.App. 176, 517 P.2d 529 (1973).

■ Appellants also allege that the trial court erred in admitting hearsay evidence from the investigating police officer that the cause of Messeret Mammo's death was homicide at the hands of either Barbara Mammo or her live-in boyfriend. Contrary to appellants' contention, there was a sufficient foundation laid to qualify the witness to give expert testimony. Such matters are left to the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Englehart v. Jeep Corp.,* 122 Ariz. 256, 594 P.2d 510 (1979); rule 104(a), Rules of Evidence. Once properly qualified as an expert, the witness was entitled to testify as to her opinions. *See* rules 703, 705, Rules of Evidence. We find no error in the trial court's evidentiary rulings which would mandate a new trial.

Finally, we deal with several related issues concerning the size of the jury's verdict. We have already upheld the determination by the trial court that the verdict was not the result of passion or prejudice. The trial court did find, however, that the verdict was excessive and ordered a remittitur. *See Alires v. Southern Pacific Company.* Appellants contend that they are entitled to a new trial on the issue of damages, or a further remittitur. Appellee contends by way of cross-appeal that the verdict was supported by substantial evidence and asks us to reinstate the jury's verdict.

■ After reviewing the evidence, we conclude that the trial court did not abuse its discretion in ordering the remittitur. Nor is a new trial on the issue of damages or a further remittitur warranted. The greatest possible discretion is given the trial court with respect to the alteration of the verdict and the granting or denial of

a new trial, because, like the jury, it has had the opportunity to hear the evidence and observe the demeanor of witnesses. *Creamer v. Troiano.* We cannot conclude that the reduced verdict in this case is an abuse of discretion and reject the argument that we should further reduce it.

For the reasons set forth, the judgment of the trial court is affirmed.

GRANT and GREER, JJ., concur.