732 P.2d 1128

**LEO EISENBERG & CO., INC., a Missouri corporation doing business in Arizona, Plaintiff/Appellee,**

v.

**John G. PAYSON and Robert F. Snowden, as successor co-trustees of the residual and marital trust established pursuant to that certain indenture dated January 12, 1959, Defendants/Appellants.**

**No. 2 CA–CV 5860.**

Court of Appeals of Arizona, Division 2, Department A.

Jan. 27, 1987.

Winston & Strawn by Jeffrey C. Brodin, Robert P. Simbro and Ellen J. Waxman, Phoenix, for plaintiff/appellee.

Miller & Pitt, P.C. by John A. Baade and Eugene N. Goldsmith, Tucson, for defendants/appellants.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a summary judgment. We set out the facts in the light most favorable to appellants, the parties opposing the motion. *Ferree v. City of Yuma*, 124 Ariz. 225, 603 P.2d 117 (App.1979). Leo Eisenberg & Co., Inc. (Eisenberg) is a corporation duly qualified to engage in sales, leases, exchanges and other transactions involving real property in the State of Arizona. In the spring of 1981, Eisenberg entered into an oral commission agreement with Murphey Investment Trusts (the appellees shall collectively be referred to as the Trust), in connection with the securing of a tenant for a restaurant owned by the Trust located at Broadway Village Shopping Center in Tucson, Arizona. Pursuant to the agreement Ei-

senberg found, as a tenant, David B. Karmel. In anticipation of a lease being executed by Karmel, the parties entered into a written commission agreement on September 10, 1981. That agreement provided, inter alia, as follows:

"For and in consideration of your services rendered in connection with a restaurant lease to be executed by David B. Karmel as lessee at Broadway Village Shopping Center, we agree to pay you a commission equal to 5% of the minimum rent scheduled in the lease. Said commission payment is subject to and contingent upon full execution by all parties of the lease and will be payable upon the date the tenant opens for business...."

Mr. Karmel and the Trust executed a lease on December 11, 1981. However, Karmel did not open the restaurant because of financial difficulties he experienced after entering into the lease agreement. The Trust and Karmel then rescinded the lease. Karmel subsequently incorporated as Karmel's on Broadway, Inc. (Broadway, Inc.). On December 31, 1982, the Trust and Broadway, Inc. entered into a lease of the same property which was the subject of the first lease, and Broadway, Inc. opened a restaurant at that site.

Eisenberg demanded payment of the commission which was due under its commission agreement with the Trust. John Sarikas, the agent of the Trust, notified Eisenberg that no commission was due since David Karmel never opened for business. This action ensued. Both sides moved for summary judgment, and the trial court granted judgment in favor of Eisenberg in the sum of $6,382.50. This appeal followed.

Appellants have raised many issues, however, several of them have been asserted for the first time on appeal and will not be considered. *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984). Appellants first contend that the commission agreement is unenforceable because it did not comply with the regulation of the Arizona Real Estate Department, R4–28–19(C), which requires that a written *listing* agreement have a definite duration or expiration date. Their second argument is that the commission agreement was conditional, in that no payment was due to Eisenberg unless and until Karmel opened for business.

Regulation R4–28–19(C) is not applicable to this case. The agreement which Eisenberg seeks to enforce is not a listing agreement. It is an agreement to pay a commission. A listing agreement is a form of agency agreement and employment in which the agent agrees to expose a property *to the market* in consideration of payment of his commission if a sale or lease is made. *Fry v. Doyle*, 151 N.J.Super. 115, 376 A.2d 585 (1977), reversed on other grounds, 167 N.J.Super. 486, 401 A.2d 265 (1979). A listing agreement is essentially an agreement between a real estate broker and the owner of property in which the owner places his property with the broker who, in turn and in prospect of a commission, agrees to attempt to find a buyer or a tenant for the owner. *Leiter v. Fleetwood Realty Corp.*, 50 Ill.Dec. 411, 95 Ill.App.3d 212, 419 N.E.2d 519 (1981). Regulation R4–28–19(C) was designed to prevent an owner's land from stagnating on the market indefinitely in one broker's hands. See *Edens View Realty & Inv., Inc. v. Heritage Enterprises, Inc.*, 42 Ill.Dec. 360, 87 Ill.App.3d 480, 408 N.E.2d 1069 (1980). The agreement here was to pay a commission for a tenant already located. There is no danger here that the property will be tied up indefinitely by Eisenberg as the result of the execution of the written commission agreement.

Before discussing the meaning of the commission agreement, we set forth what is not at issue here. There is no contention that there was any fraud or subterfuge by the Trust, Karmel and Broadway, Inc. in the rescission of the first lease and the entry into a subsequent lease. The parties' contentions are plain and straightforward. Eisenberg contends that it is entitled to a commission under the September 10, 1981, agreement because the only condition to the payment of its commission, the execu-

tion of the lease, was accomplished and because a broker cannot be deprived of his commission simply because it ultimately develops that financial difficulties arise which prevent the buyer from performing. See *Campbell v. Mahany,* 127 Ariz. 332, 620 P.2d 711 (1980). The Trust contends that the commission was not due because it was subject to another condition, the opening of the restaurant for business, which did not occur.

In the absence of a specific contract to the contrary, when a broker has brought together the parties to a sale (or lease), and they have fully agreed on the terms and entered into a binding contract his duties are at an end, his commission is fully earned, and it is immaterial that the parties thereafter rescind the contract. *Campbell v. Mahany,* supra. In the present case, however, the contract may reasonably be construed as specifically providing to the contrary. If the payment of the commission was subject to the opening of the restaurant, then Karmel's financial difficulties, which prevented the opening, excused the Trust from its obligation to pay a com-mission. That is the purpose of such a condition.

We find that the commission agreement is ambiguous. It can reasonably be construed in more than one sense and its meaning cannot be determined within the four corners of the instrument. The intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on a motion for summary judgment. *Hamada v. Valley Nat. Bank,* 27 Ariz.App. 433, 555 P.2d 1121 (1976).

In our discretion we deny appellants' request for attorney's fees on appeal.

Reversed and remanded.

HATHAWAY, C.J., and FERNANDEZ, J., concur.