785 P.2d 49

**LEO EISENBERG & CO., INC.,
Plaintiff–Appellee,**

v.

**John G. PAYSON and Robert F. Snowden, co-trustees, Murphey Investment Trusts, Defendants–Appellants.**

**No. CV–89–0203–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 21, 1989.

Lewis and Roca by John N. Iurino and Megan E. Miller, Tucson, for plaintiff-appellee.

Miller & Pitt, P.C. by John A. Baade, Tucson, for defendants-appellants.

CORCORAN, Justice.

This is the third appellate decision in a lawsuit originating more than 6 years ago involving a disputed real estate commission in the amount of $6,382.50. At this point in the litigation, the parties each have accumulated attorneys' fees totalling at least 6 times the amount of the original claim. Thus, the attorneys' fees apparently are currently the driving force of the litigation. Although we are reluctant to prolong this epic battle, we granted review because we believe the court of appeals erred in applying the facts and the law in this case. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

*Factual and Procedural Background*

1. *The Dispute*

Because the facts out of which this suit arose are not completely and accurately detailed in the two previous opinions in this case, we will recite them again. *See Leo Eisenberg & Co., Inc. v. Payson (Eisenberg I)*, 152 Ariz. 390, 732 P.2d 1128 (App. 1987); *Leo Eisenberg & Co., Inc. v. Payson (Eisenberg II)*, 162 Ariz. 475, 784 P.2d 301 (App.1989). In 1981, Leo Eisenberg & Co., Inc. (Eisenberg), a broker, executed a letter agreement with Murphey Investment Trusts (the Trust) that provided for payment of a commission for having located a restaurant tenant, David B. Karmel (Karmel), for a shopping center owned by the Trust. The pertinent part of the agreement provided:

> For and in consideration of your services rendered in connection with a restaurant lease to be executed by David B. Karmel as lessee at Broadway Village Shopping Center, we agree to pay you a commission equal to 5% of the minimum rent

scheduled in the lease. Said commission payment is subject to and contingent upon full execution by all parties of the lease and will be payable upon the date the tenant opens for business.

The commission agreement contained no expiration date, at Eisenberg's specific request. Eisenberg negotiated on behalf of Karmel with the Trust. In December 1981, the proposed tenant, Karmel, executed a lease (the 1981 lease) with the Trust for the restaurant location, but was unable to obtain financing for construction to improve the premises. In June 1982, the Trust terminated the lease because of Karmel's delay in opening the restaurant, with the understanding that the parties would enter into another lease on the same terms if Karmel could later perform. The Trust agreed to keep open Karmel's option to lease the property if Karmel paid the amount of $886.50 plus sales tax, and provided escrow funds of $90,000.00 to provide the improvements to the restaurant. When Karmel complied with these conditions, the Trust executed a second lease in December 1982 (the 1982 lease), substantially identical to the first. The lease was executed by David B. Karmel but the named tenant was "Karmel's on Broadway, Inc." (Karmel's Inc.), an Arizona corporation Karmel formed in 1982 for the purpose of obtaining a liquor license for the restaurant. On December 31, 1982, the restaurant opened for business in the same location and under the same terms as the 1981 lease Eisenberg had negotiated for Karmel with the Trust.

When Eisenberg demanded its commission of $6,382.50 pursuant to the commission agreement, the Trust responded as follows:

We feel that since the tenant did not perform under the lease, no commission is owing.

Rather than rest our decision solely on legal grounds, we have decided to offer to settle your claim for a commission. Without admitting any liability to do so, we would offer to pay you a commission in the amount of $4,390.00.

Eisenberg filed this action in March 1983, seeking payment of the full commission,

$6,382.50. On cross-motions, the trial court granted summary judgment in favor of Eisenberg, finding it was the "procuring cause" of the lease, and entered judgment for the amount of the commission. The Trust appealed.

### 2. *The First Appeal*

In *Eisenberg I*, the court of appeals reversed the trial court's summary judgment in Eisenberg's favor, finding the terms of the agreement ambiguous about whether the commission was subject to the condition that the restaurant open for business. The court held that "[t]he intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on a motion for summary judgment," and remanded the case for trial. *Eisenberg I*, 152 Ariz. at 393, 732 P.2d at 1131.

The court added the following statement in *Eisenberg I*, based solely on the summary judgment record before it at that time:

If the payment of the commission was subject to the opening of the restaurant, then Karmel's financial difficulties, which prevented the opening, excused the Trust from its obligation to pay a commission. That is the purpose of such a condition.

152 Ariz. at 393, 732 P.2d at 1131. The court of appeals denied the Trust's request for attorneys' fees for that appeal.

Neither party moved for reconsideration or sought review from the decision in *Eisenberg I*.

### 3. *Remand to the Trial Court and Jury Verdict*

After remand, the trial court denied the parties' cross-motions for summary judgment. Eisenberg conceded that opening the restaurant was a condition precedent to payment of the commission, but contended that Karmel's Inc. fulfilled that condition by opening the restaurant in December 1982.

Following a two-day trial, the jury returned its verdict for Eisenberg, finding it was entitled to the commission under the agreement. Eisenberg was awarded its

commission of $6,382.50. The trial court awarded costs of $754.35, and attorneys' fees of $22,500.00. The Trust again appealed.

### 4. *The Second Appeal*

In *Eisenberg II*, the court of appeals reversed the jury verdict, holding that the opening of the restaurant by Karmel's Inc. failed to satisfy the condition of the agreement that "the tenant opens for business" before the commission became payable. 162 Ariz. at 475, 784 P.2d at 301. Although the court had found the condition "ambiguous" in the previous appeal, it now concluded that "[t]he commission agreement is clear on its face that *Karmel* had to sign a lease, be the lessee *and be the tenant who opened for business.*" *Eisenberg II*, 162 Ariz. at 477, 784 P.2d at 303 (emphasis added). The court reasoned that because Eisenberg failed to show that Karmel's Inc. was the "alter ego" of Karmel, it failed to "pierce the corporate veil" to establish that Karmel personally had opened the restaurant. The court also found that Karmel's Inc. leased the property "with other investors and without the assistance of Eisenberg," and that Eisenberg thus was not the "procuring cause" of the lease. *Eisenberg II*, 162 Ariz. at 476, 784 P.2d at 302.

The court remanded the case for entry of "summary" judgment in favor of the Trust, and awarded the Trust attorneys' fees for both trial actions and the second appeal, totalling $38,965.30, as well as costs of $3,209.30. Eisenberg petitioned this court for review.

### *Issues Presented*

Eisenberg argues that the court of appeals opinion in *Eisenberg II* must be vacated because (1) the court did not base its decision on factual support for the jury verdict in the record; (2) the court incorrectly applied the doctrine of piercing the corporate veil; and (3) a conflict exists between *Eisenberg I* and *Eisenberg II* that results in substantial injustice. The Trust argues that reversal was warranted because *Eisenberg I* was "the law of the case" and because it presented other evidentiary issues supporting reversal.

### *Discussion*
### 1. *Construction of the Commission Agreement*

Eisenberg argues that *Eisenberg II*'s determination that the contract was "clear on its face" ignores the court's own holding in *Eisenberg I* that the terms of the agreement were "ambiguous" and thus incorrectly construes the agreement.

■ Whether a contract is ambiguous is a question of law we may decide independently on review. *Abrams v. Horizon Corp.*, 137 Ariz. 73, 669 P.2d 51 (1983). If the agreement can be reasonably construed in more than one manner, the terms are ambiguous and subject to a determination by the trier of fact about the intent of the parties, based on extrinsic evidence. *Leikvold v. Valley View Comm. Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984); *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 264, 681 P.2d 390, 416 (App. 1983).

■ In this case, the commission agreement provided that payment was subject to the following conditions: (1) execution of the lease "by David B. Karmel as lessee"; (2) "full execution by all parties"; and (3) "payable upon the date the tenant opens for business." Because the "final event" did not occur, the court of appeals found that the Trust was entitled to summary judgment. *Eisenberg II*, 162 Ariz. at 476–477, 784 P.2d at 302–303. The court of appeals concluded, as a matter of law, that the opening of the restaurant by Karmel's Inc. did not satisfy the condition of the agreement that "the tenant opens for business." We do not believe that the terms of the agreement can be construed so clearly.

In *Eisenberg I*, the court of appeals previously determined that the agreement was ambiguous about whether the agreement required opening of the restaurant as a condition precedent to payment of the commission. 152 Ariz. at 393, 732 P.2d at 1131. We also find the agreement ambiguous about whether it required "David B. Kar-

mel as lessee" to open the restaurant. Because the language of the contract reasonably can be construed in more than one manner, the intent of the parties was a question for the trier of fact to resolve.

The jury was instructed as follows:

A condition precedent is a fact which must exist or occur before a duty of immediate performance or promise arises. In this case the commission payment to the plaintiff was subject to and contingent upon full execution by all parties of the lease, and that commission will be payable upon the date the tenant opened for business. If either of those conditions did not occur, then the plaintiff is not entitled to a commission.

The jury, by its verdict in favor of Eisenberg after being instructed about the conditions precedent to payment of the commission, implicitly determined that the "final event" of the tenant opening the restaurant had occurred. The jury was entitled to consider the circumstances surrounding the letter agreement and the parties' conduct in determining the intent of the parties with regard to the requirement that the restaurant be opened before the commission was payable. We find the verdict supported by the following evidence regarding the intent of the parties:

1. All parties were aware that, because of the age of the premises, Karmel would have to make substantial renovations before opening the restaurant; for this reason, Eisenberg insisted that the letter agreement not contain an expiration date;

2. The 1981 lease was rescinded on the express understanding that the Trust would enter a second lease on the same terms with Karmel as those negotiated by Eisenberg;

3. The 1982 lease with Karmel's Inc. was the result of one continuous course of dealing between Karmel and the Trust, which was initiated by Eisenberg's negotiations;

4. The restaurant that opened was the same one anticipated under the 1981 lease but was leased by Karmel's Inc. rather than by Karmel individually; and

5. Karmel had incorporated for the purpose of acquiring a liquor license, not for the purpose of renegotiating the lease as a separate entity. Karmel had not been incorporated when the 1981 lease was negotiated. Karmel made the only capital contribution to the corporation and owned 85% of the stock.

Under these facts, the jury reasonably could have determined that the opening of the restaurant in 1982 by Karmel's Inc. pursuant to the 1982 lease satisfied the condition that "the tenant opens for business" before the commission became payable. The court of appeals thus erred in concluding, as a matter of law, that the parties intended that the commission be paid only if Karmel individually opened the restaurant.

### 2. Law of the Case: Eisenberg I vs. Eisenberg II

The Trust argues that the trial court was bound on remand after *Eisenberg I* to follow the court of appeals' determination that "[i]f the payment of the commission was subject to the opening of the restaurant, then Karmel's financial difficulties, which prevented the opening, excused the Trust from its obligation to pay a commission." 152 Ariz. at 393, 732 P.2d at 1131. Implicit in this language is the inference that the opening of the restaurant by Karmel's Inc. did not satisfy the condition that "the tenant opens for business" before the commission became payable. The Trust argues that this inference became "the law of the case," which required entry of judgment for the Trust on remand to the trial court, and that supported the reversal of the jury verdict in *Eisenberg II*. We disagree.

In order for a decision in a prior appeal to become the law of the case in all subsequent stages of the same action, including a later appeal, the facts, issues, and evidence in the later actions must be substantially the same as those on which the first decision was based. *Dancing Sunshines Lounge v. Industrial Comm'n*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986); *Alires v. Southern Pacific Co.*, 100 Ariz. 6,

11–12, 409 P.2d 714, 718 (1966). The summary judgment challenged in *Eisenberg I* did not involve the issue whether the tenant opening for business had to be Karmel individually rather than the corporation; the issue was whether the commission agreement required that the restaurant open under the 1981 lease as a condition precedent to payment of the commission. Therefore, the court's statement that Karmel's inability to open the restaurant under the 1981 lease would excuse the trust from paying the commission was dictum for the proposition that the corporation could not open the restaurant under the 1982 lease, an issue not litigated in that appeal, and was not law of the case in the subsequent proceedings.[1]

Furthermore, the facts before the court in *Eisenberg I* were limited to those in the summary judgment record. The facts from the subsequent trial record that we have cited in support of the jury verdict were before the court in *Eisenberg II*. Because the two appeals were based on different factual records, legal conclusions drawn on facts presented in the first appeal did not constitute law of the case in the second appeal. *See Alires.*

Additionally, the doctrine of law of the case does not apply when the former decision appears "palpably erroneous." *Sibley v. Jeffreys*, 81 Ariz. 272, 277, 305 P.2d 427, 430 (1956). We believe the dictum in *Eisenberg I* excusing the Trust from paying the commission if Karmel was required, as a condition precedent, to open the restaurant is manifestly inconsistent with the holding in the same case that the contract term was ambiguous and the intent of the parties was to be left to the factfinder. We therefore find that neither the trial court nor the court of appeals in *Eisenberg II* was bound by the dictum of *Eisenberg I* as law of the case.

### 3. *Doctrine of Piercing the Corporate Veil*

■ The court of appeals also concluded that Eisenberg would have had to "pierce the corporate veil" and show that Karmel was the "alter ego" of Karmel's Inc. in order to prevail at trial. However, the doctrine of "piercing the corporate veil" applies only to plaintiffs who seek recovery against the personal assets of corporate shareholders or directors. *See, e.g., Standage v. Standage*, 147 Ariz. 473, 711 P.2d 612 (App.1985); *Honeywell, Inc. v. Arnold Constr. Co.*, 134 Ariz. 153, 654 P.2d 301 (App.1982). Eisenberg does not seek recovery against Karmel in this action, so the doctrine does not apply. Eisenberg is not required to show that Karmel was the alter ego of Karmel's Inc. to recover against the Trust under the commission agreement; its burden is merely to show the existence of the agreement with the Trust and that the conditions were met, entitling it to payment. The court of appeals thus misapplied the law in reversing the jury verdict.

### 4. *Rule of Marshall v. White*

■ The court of appeals also relied on the legal principle that a broker cannot recover a commission when the broker's prospect fails to lease the property individually but thereafter leases it through "a partnership or syndicate of which the prospect was a member at the time of the broker's negotiation, or with which he subsequently became associated for the purposes of [leasing] the property." *Eisenberg II*, 162 Ariz. at 476, 784 P.2d at 302, citing *Marshall v. White*, 245 F.Supp. 514 (W.D.N.C.1965); *see also* Am.Jur.2d *Brokers* § 191 at 933–34 (1964). Without either approving or rejecting this rule, we find that it does not apply to this case. Karmel was not incorporated "at the time of the broker's negotiation," nor was any evidence introduced at trial that he incorporated after the negotiation "for the purposes of [leasing] the property." Rather, the only evidence regarding the incorporation was that its purpose was to acquire a liquor license for the restaurant. Under

---

**1.** The cross-motions filed in superior court do not make clear arguments regarding the 1981 and 1982 leases, nor did the trial court specify reliance on one lease or the other in granting Eisenberg's motion for summary judgment.

these facts, the court misapplied the rule of *Marshall v. White*.[2]

Because reversal of the jury verdict is not legally or factually supported, we vacate the court of appeals decision.

### 4. Cross–Issues Preserved on Appeal

In *Eisenberg II*, the Trust raised several additional evidentiary bases for reversal of the trial court's judgment following jury verdict. The court of appeals, finding dispositive the above issues regarding construction of the agreement, did not address all the grounds raised by the Trust in support of reversal. On review, the Trust contends that other errors in the trial court would require reversal in any event. Those issues not decided by the court of appeals, and preserved in this court for further review as cross-issues, include the following:

1. Did the trial court err in admitting evidence that the Trust admitted liability for the commission during settlement negotiations, in violation of rule 408, Arizona Rules of Evidence?

2. Did the trial court err in allowing testimony of a witness not listed in the pretrial statement, whom the Trust was not allowed to impeach for bias and interest?

Because these issues were not addressed on appeal, we remand this matter to the court of appeals to determine these remaining issues. *See* rule 23(i), Arizona Rules of Civil Appellate Procedure.

### 5. Attorneys' Fees

■ Both parties have requested attorneys' fees in this action pursuant to A.R.S. § 12–341.01. At this procedural juncture, however, we cannot determine who will be the "successful party" on appeal after remand. Neither does this case involve reversal of an interim order determining an issue of law "sufficiently significant that the appeal may be considered as a separate unit." *Cf. Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985). We therefore decline to grant an award of attorneys' fees to either party at this point in the litigation.

■ We believe, however, that the ultimate successful party in this case should recover reasonable attorneys' fees for all stages of the litigation, including review before this court. We therefore authorize an award of fees to the successful party in the final disposition of this case, upon compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure.[3] We emphasize that the fees awarded should be "reasonable." Unfortunately, this case has dragged on because attorneys' fees have overcome the original claim. We agree with the comments of the court of appeals, discussing a similar situation:

> We recognize that the attorneys' fees in this case have not simply become a case of the tail wagging the dog; the attorneys' fees have become the dog. The attorneys' fees incurred by all parties have exceeded the amounts in issue by

**2.** The court of appeals also held that Eisenberg was not the "procuring cause" of the 1982 lease, relying on similarities between this case and *Marshall v. White*. In *Marshall*, the broker procured a prospect who did not perform individually but later closed the transaction as incorporator of a corporation in which he invested no money and owned no stock. The court held the broker was not the "procuring cause" of the transaction pursuant to the broker's listing agreement to procure a buyer for the seller. 245 F.Supp. at 518.

Among the other obvious factual distinctions between *Marshall* and this case, we point out that this case involved no listing agreement to "procure" a tenant. Eisenberg's commission derived from the letter agreement, not a listing agreement to procure a tenant. The court of appeals pointed out this distinction in *Eisenberg*

*I* when it held that a regulation governing listing agreements did not apply to this case: "The agreement which Eisenberg seeks to enforce is not a listing agreement. It is an agreement to pay a commission.... The agreement here was to pay a commission for a tenant already located." 152 Ariz. at 392, 732 P.2d at 1130. Thus, *Marshall* was a "procuring cause case"; this is not.

**3.** Eisenberg has filed a lengthy motion in this court to include objections to costs and fee award as part of the petition for review. Because of our disposition remanding to the court of appeals for further review and ordering an award of fees to the ultimate winner, we do not address those objections in this review. We therefore will deny the motion by separate order.

such a vast amount that the substantive issues have diminished in intrinsic importance and serve only to direct or deflect the mounting liabilities for attorneys' fees. It would appear to this court that this case would have been ideally suited for binding arbitration.

*Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 475, 733 P.2d 652, 672 (App.1986). This too is a case that seems suited to arbitration; such an alternative dispute resolution would have saved time, money, and the unwarranted drain on the court system caused by such a lengthy legal battle over a proportionately small amount of money.

### Conclusion

We hold that the court of appeals erroneously concluded as a matter of law that the opening of the restaurant by Karmel's Inc. did not satisfy the ambiguous condition precedent in the commission agreement that "the tenant opens for business." That issue was one of fact necessarily decided by the jury in reaching its verdict in favor of Eisenberg. The court of appeals also misapplied the doctrine of piercing the corporate veil and the rule cited from *Marshall v. White*. We therefore vacate the court of appeals decision.

Because the resolution of this matter requires consideration of issues not addressed by the court of appeals in its decision, we remand to that court for further proceedings consistent with this decision.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

NOTE: Justice STANLEY G. FELDMAN recused himself and did not participate in the determination of this matter.