EDEN MUSIC CORPORATION et al., Respondents, v TIMES SQUARE MUSIC PUBLICATIONS COMPANY et al., Appellants, et al., Defendants.

First Department, April 9, 1987

## APPEARANCES OF COUNSEL

*Stewart L. Levy* of counsel *(Parcher Arisohn & Hayes, P. C.,* attorneys), for respondents.

*Stuart Prager* of counsel *(Abeles Clark & Osterberg,* attorneys), for appellants.

## OPINION OF THE COURT

Asch, J.

Clyde Otis is the controlling principal of plaintiffs Eden Music Corporation and Prentice Music, Inc., music publishing companies. In 1973, these corporations owned and controlled over 1,000 copyrighted songs including many composed by Otis, in whole or in part. To facilitate the exploitation of these songs they entered, in that year, into separate agreements with the New York Times Music Corporation and Music of the Times Publishing Corporation.

The contracts involved the sale of a one-half interest in the songs owned by Eden and Prentice for a total price of $125,000 and 50% of the buyer's net receipts. They provided, in pertinent part:

"1. Seller [Seller Plaintiffs] hereby sells, assigns, grants, transfers and sets over to Buyer an undivided one-half (½) interest throughout the world and in perpetuity in an to the following:

"a. All musical compositions * * * now owned and/or controlled by Seller and/or any other firms, companies and corporations in which Mr. Clyde Otis has an interest (all of which being sometimes hereinafter referred to as the 'Seller Songs')

"b. Any and all copyrights, rights to copyright, rights to secure renewals and/or extensions of copyright, copyright renewal and copyright extension rights, title rights and trademark rights under all laws now or hereafter in effect in and to all Seller Songs, including but not by way of limitation those Seller Songs listed and described in Exhibit A and the claims to copyrights registered in the United States Copyright Office as described by number in Exhibit A * * *

"2. Notwithstanding anything to the contrary contained in

Paragraph 1 above, Seller has advised Buyer that Seller does not hold all right, title and interest in the Seller Songs listed and described in Exhibit B * * * and that Seller's interest in such particular Seller Songs is as defined in the contracts described in Exhibit B * * * With respect only to such Seller Songs so listed in Exhibit B, Seller shall be deemed to be hereby selling, assigning, granting, transferring and setting over to Buyer an undivided one-half (½) interest throughout the world and in perpetuity only in and to Seller's existing interest therein".

In 1976, Times Music and Music of the Times, with plaintiffs' permission, conveyed their interest under the contracts to defendants Times Square Music Publications Company and Herald Square Music Company.

Times Square subsequently assigned its interest under the contracts to defendant Alley Music Corporation and Trio Music, Inc., without permission.

Under Federal law at the time the agreements were made, copyrights were initially granted for a period of 28 years (Original Term), after which time the composer could renew the copyright for another period of 28 years (Renewal Term). The law was amended in 1976 to provide for a renewal term of 47 years.

The instant dispute revolves around ownership of the renewal rights to approximately 300 of the 1,000 songs included in the sale transaction. Plaintiffs maintain that at the time of the 1973 sale, they owned only the rights to those 300 compositions which included the Original Term. Accordingly, plaintiffs subsequently purchased the renewal rights to a majority of those songs. Many of those songs were written by Otis, who conveyed his one-half interest in the renewal rights to the songs to Iza Music Corporation. On the other hand, defendants maintain that the 1973 contracts, to which they are the successors in interest, conveyed the renewal rights and the right to secure the renewal rights.

Plaintiffs brought this action seeking, *inter alia,* a judgment declaring that defendants have no ownership claims to the disputed songs. They further sought a preliminary injunction enjoining the defendants from interfering with plaintiffs' rights in these songs. The Supreme Court granted plaintiffs injunctive relief, finding that the agreements gave defendants the right to participate in securing renewals but did not give an interest in rights plaintiffs had subsequently acquired.

Thereafter, in the second order appealed from, the Supreme Court granted plaintiffs partial summary judgment, finding that they had the exclusive rights to the copyrights on the disputed compositions. We disagree with both these orders.

The interpretation of written contracts which are clear and explicit is a matter for the courts to resolve. However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291).

The 1973 agreements present conflicting terms. Thus, paragraph 1 (b) clearly includes "rights to secure renewals and/or extensions of copyright, copyright renewal and copyright extension rights * * * to all Seller Songs" among the items being transferred in the sale.

Also, the sellers' execution of the assignments for recording in the United States Copyright Office, pursuant to paragraph 15 of the contracts, includes the assignment of "any and all renewals and extensions of such copyrights that *may be* secured under the laws now or hereafter pertaining thereto * * * to have and to hold the same unto the Assignee, its successors and assigns, for and during the existence of all such copyrights and all renewals and extensions thereof." (Emphasis added.)

Furthermore, as noted by defendants, paragraph 2 of the contracts distinguishes between two groups of songs affected by the contract. The first group, listed in exhibit A, pertains to songs owned and/or controlled by seller. The second group of songs, specified in paragraph 2 and in exhibit B, pertains to songs to which the seller holds less than all right, title and interest. However, there was no provision expressly excluding the Renewal Term in the disputed songs.

The principle of *expressio unius est exclusio alterius,* i.e., "the expression in the contract of one or more things of a class implies exclusion of all not expressed", would appear, therefore, to bar plaintiffs from now arguing that renewal rights were excluded from the contract.

On the other hand, paragraph 19 of the contracts requires the sellers to "upon the request of Buyer execute, acknowledge and deliver any and all further or other assignments or instruments which may be necessary or appropriate in Buyer's opinion to effectuate, confirm or evidence any provision or

provisions of this Agreement." Apparently, pursuant to that provision, Otis executed an agreement with Eden which Murray Deutch, the president of New York Times Music Corporation, drafted. That contract expressly excludes the passage of the renewal rights from Otis to Eden.

This Otis/Eden agreement, which was executed on the same day as the Eden/Times Music and Prentice/Music of the Times contracts, must be read together with those contracts in interpreting the transactions, and thus a conflict is created which bars summary judgment.

Further, the parol evidence introduced by plaintiffs in support of their application for an injunction does not foreclose, but rather raises, factual issues.

The acquisition by defendants of the renewal rights to certain songs composed by Belford Hendrich and Jimmy Williams, as well as correspondence between representatives of defendants and Otis in the summer of 1984, indicate that defendants themselves may not have believed the renewal rights were conveyed at the time of the 1973 contract. However, the conduct of Otis in the creation of Iza Music Corporation and Vanessa Music Corp. raises issues of possible misrepresentation.

Since paragraph 2 in the contracts was included to provide for songs to which Eden and Prentice did not own all the rights, it would appear that the inclusion of the disputed songs on schedule A, a list of all songs which Eden/Prentice owned or controlled, was deceptive. Thus, most of the 236 songs listed on the Otis/Eden 1984 agreement are listed on schedule A of the 1973 contracts rather than schedule B, songs and copyrights in which Eden/Prentice held less than all right, title and interest.

Although plaintiffs contend that the renewal interests could not be conveyed in 1973 since renewal rights revert to the songwriter at the expiration of the initial 28-year copyright period, if the renewal rights were not conveyed, plaintiffs may have breached the warranty provision of the agreements, which provides that the sellers did have authority to convey such interests.

Although not raised by either plaintiffs or defendants upon appeal, the issue of whether there was an improper assignment of the rights herein to defendants Alley and Trio is inextricably bound together with the other issues herein and, therefore, must await final determination with them.

Since a dispute is present as to what the parties intended to convey, the Supreme Court erred in awarding plaintiffs a preliminary injunction. Furthermore, there is no indication that plaintiffs are suffering "irreparable" injury since third parties have merely declined to pay moneys allegedly due at this time, pending determination of the dispute.

Accordingly, the order of the Supreme Court, New York County (Emily Jane Goodman, J.), entered September 26, 1986, granting plaintiffs' motion for a preliminary injunction, should be reversed, on the law and facts and in the exercise of discretion, and the motion denied, without costs or disbursements, and the

Order of the Supreme Court, New York County (Edward J. Greenfield, J.), entered September 26, 1986, denying defendants' motion for summary judgment and granting plaintiffs' cross motion for summary judgment declaring plaintiffs to have exclusive rights to disputed compositions, should be modified, on the law, to the extent of denying plaintiffs' cross motion, and otherwise affirmed, without costs or disbursements.

SULLIVAN, J. P., CARRO, MILONAS and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on September 26, 1986, unanimously reversed, on the law and facts and in the exercise of discretion, and plaintiffs' motion for a preliminary injunction denied, without costs and without disbursements, and an order of said court, entered on or about September 26, 1986, unanimously modified, on the law, to the extent of denying plaintiffs' cross motion for summary judgment, and otherwise affirmed, without costs and without disbursements.