**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

No. 96-4570

———————————————

D.C. Docket No. 90-1606-CIV-WMH

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/12/99
THOMAS K. KAHN
CLERK

WESTERN GROUP NURSERIES, INC.,
an Arizona corporation; WESTERN UNITED
NURSERIES, INC., an Arizona corporation,                    Plaintiffs-Appellants,

versus

MARTIN ERGAS, WORLD NURSERIES,
INC., a Delaware corporation                                Defendants-Appellees.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————————————————

(February 12, 1999)

Before COX and BARKETT, Circuit Judges, and SMITH*, Senior Circuit Judge.

SMITH, Senior Circuit Judge:

Western Group Nurseries, Inc. ("Western Group") appeals the May 18, 1995 order of the

District Court for the Southern District of Florida, entering summary judgment for defendant Martin

Ergas ("Ergas"). Western Group sued Ergas, a limited partner of a tax shelter partnership, to force

him to pay his pro rata share of a promissory note entered into by the partnership. Ergas defended

———————————————

*Honorable Edward S. Smith, Senior Circuit Judge for the Federal Circuit, sitting by designation.

on the ground that, as part of a related transaction, Western Group had agreed not to sue the limited partners. The District Court held the disputed contract language to be an unambiguous covenant not to sue and granted summary judgment to Ergas. We hold that the contract language at issue is ambiguous when viewed in the proper context and therefore reverse and remand for its interpretation in light of extrinsic evidence.

*Facts*

This case arises out of a complex series of transactions in which nursery owners sold their properties to a tax shelter syndicator, who in turn sold the properties to a limited partnership as a tax shelter.

At the end of 1984, thirteen Arizona nursery owners ("Sellers") contracted to sell their nursery businesses and properties to World Nurseries, Inc. ("Syndicator"), a tax shelter promoter. Of the $22.1 million purchase price, $3 million dollars was to be paid in cash at closing, $17 million was to be paid pursuant to a promissory note from Syndicator, and $2.1 million was contingent on the sale of certain nursery stock.

In a separate transaction contemplated by the Sellers/Syndicator agreement, Syndicator immediately sold the nursery assets to Arizona World Nurseries Limited Partnership ("Partnership") for $33 million. The increased purchase price reflected the additional value of the tax benefits to the limited partners.[1] Partnership paid $6.57 million of the purchase price in cash and promised to

---

[1] Partnership was formed in an effort to create a tax shelter for the partners. In light of an opinion letter from Arthur Andersen & Co., the partners expected to be able to deduct up to $355,000 in losses for every $100,000 invested. Ergas purchased two limited partnership units for $200,000.

pay the remaining $26.43 million pursuant to a promissory note. Partnership's note (referred to as the "Wraparound Note") was nonrecourse as to the partnership itself,[2] but the limited partners were liable for $260,000 per unit purchased. Partnership conveyed a purchase money security interest (PMSI) in the nursery assets to Syndicator to secure the Wraparound Note.

To secure payment of its note to Sellers, Syndicator conveyed a PMSI in the nursery assets to Sellers. As additional collateral for its debt to Sellers, Syndicator conveyed the Wraparound Note to Sellers. The note was nonrecourse as to Syndicator.

Paragraph 1 of the Sellers/Syndicator security agreement established the Sellers' security interest in the Wraparound Note and reads, in pertinent part:

> Security Interest. To secure the timely payment of the Purchase Price, including but not limited to the timely payments of principal and interest under the [Syndicator's] Note, the payment of the Additional Purchase Price and the payment and performance of all obligations and liabilities of Debtor [Syndicator] to Secured Party [Sellers] under the Maintenance Contracts, the Note, the Purchase Agreement … and this Security Agreement (such payments under the Note and the payment and performance of such obligations and liabilities are hereinafter referred to, collectively, as the "Obligations"), Debtor shall, and hereby does, grant, convey, assign, pledge and transfer to Secured Party, a purchase money security interest in and to the Properties and the [Wraparound] Note (except that Secured Party shall not have the right to sue the Limited Partners or General Partners of the Partnership personally thereon other than to the extent of payments made to them by the Partnership)

(emphasis added). The intended effect of the emphasized parenthetical phrase is disputed by the parties and is the critical issue in this case.

After barely a year, Partnership found itself unable to make payments on its promissory note to Syndicator. Consequently, Syndicator could not make its payments to Sellers. Sellers declared

---

[2] Nonrecourse debt is "[d]ebt secured by the property that it is used to purchase. The purchaser of the property is not personally liable for the debt on default. Rather, the creditor's recourse is to repossess the related property." BLACK'S LAW DICTIONARY 1057 (6th ed. 1990).

Syndicator in default and filed suit in Arizona for foreclosure. In October 1986, the trial court ordered foreclosure. The Arizona Court of Appeals affirmed.

On December 1, 1986, Western United Nurseries, Inc. ("Western United"), which obtained judgment in its name as representative of Sellers, assigned part of its judgment against Syndicator to Sellers' newly formed entity, Western Group Nurseries, Inc. ("Western Group"), to bid at the Arizona sheriff's sale of Syndicator's collateral securing its debt on December 2, 1986. Western Group purchased the Wraparound Note at the sale. Western Group's efforts to collect on this note have led to a string of lawsuits including the instant case.

*Procedure*

After Western Group purchased the Wraparound Note, it sued Partnership and its limited partners (including Ergas) in Arizona state court. The limited partners were dismissed for lack of personal jurisdiction. The court entered judgment against Partnership accelerating the entire principal balance and interest accrued on the Wraparound Note. Western Group then sued the limited partners individually to collect the partners' pro rata shares of the amount due under the note.[3]

Western Group filed suit against Ergas in 1989 in a Florida circuit court. After Ergas filed a motion to dismiss, Western Group filed a notice of voluntary dismissal. Ergas moved for attorney's fees under a Florida statute which allows sanctions for filing suits in which "the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense

---

[3]   Western Group tries to introduce as evidence that more than seventy of the limited partners have already settled and that at least four cases have been resolved in Western Group's favor. The disposition of these other cases has no effect on the legal issue here: whether the contract term is ambiguous or not.

4

of the losing party." FLA. STAT. ANN. § 57.105(1) (West 1993). The state circuit court granted Ergas the relief sought. Western Group appealed to the Third District Court of Appeal of Florida. The appellate court affirmed Ergas's final judgment against Western Group on November 2, 1994, and subsequently denied motions for rehearing.

After Western Group took a voluntary dismissal of the state court case, they filed the same complaint, adding federal jurisdictional allegations, in the United States District Court for the Southern District of Florida. Ergas moved to dismiss the case for failure to state a claim and in July 1991, the district court dismissed the complaint, finding that the covenant not to sue was clear and unambiguous on its face, and that Western Group's predecessor had unequivocally contracted not to sue the limited partners. Western Group filed an amended complaint, adding allegations about the parties' intentions in making the contract. Ergas again moved to dismiss, contending that intentions are irrelevant when an agreement is clear and unambiguous on its face.

In October 1993, the district court dismissed the amended complaint and Western Group filed a second amended complaint in November 1993. This complaint added Western United as plaintiff and Syndicator as defendant and added a claim for reformation of the contract between these added parties. On Ergas's motion to dismiss, the district court found the reformation claim to be barred by the applicable statute of limitations, dismissed the allegations against Syndicator and entered final judgment in Ergas's favor. Western Group appeals the decision of the district court dismissing its claims against Ergas. Western Group has not appealed its reformation claim.

Both parties have filed motions for attorney's fees, which were carried with the case. Ergas also filed a motion to have the case mooted under the doctrine of res judicata, claiming that the decision by the Florida appellate court precludes this litigation. That motion was also carried with

5

the case.

*Ergas's Motion to Dismiss the Appeal as Moot under the Doctrine of Res Judicata*

Before we consider the merits of the case, we must first decide whether this appeal is rendered moot by the doctrine of res judicata. "Under Florida law, res judicata bars parties from bringing actions which raise issues that have already been adjudicated in a previous action between the same parties or their privies. To successfully invoke res judicata as a defense to an action, a defendant must establish (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of parties, and (4) identity of the quality or capacity of the person for or against whom the claim is made." Meshulam v. General Motors Corp., 995 F.2d 192, 194 (11th Cir. 1993) (footnote and citations omitted). "To support a defense of res judicata, it must be clear that the court in the previous action intended that the disposition there was to be without right to further proceedings by the plaintiff." Equitable Fire & Marine Ins. Co. v. Bradford Builders, Inc., 174 So. 2d 44, 45 (Fla. Dist. Ct. App. 1965).

The Florida statute governing the award of attorney fees for filing frivolous lawsuits reads, in pertinent part:

> The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party.

FLA. STAT. ANN. § 57.105(1) (West 1993) (emphasis added). Ergas contends that because the state trial court found "a complete absence of a justiciable issue of either law or fact" raised by Western Group, the attorney's fee award amounted to a final determination on the merits of the case and is res judicata to the instant case. We disagree.

6

A plaintiff has an absolute right to voluntarily dismiss his action at any time prior to a summary judgment hearing, or before the case is sent to the jury. See Fla. R. Civ. P. 1.420(a)(1); Meshulam, 995 F.2d at 194; Bevan v. D'Allessandro, 395 So. 2d 1285, 1286 (Fla. Dist. Ct. App. 1981). "A voluntary dismissal is 'without prejudice' in the sense that the defendant may not rely on the previous dismissal as a defense to any subsequent lawsuit." Meshulam, 995 F.2d at 194 (citing Randle-Eastern Ambulance Serv. Inc. v. Vasta, 360 So. 2d 68 (Fla. 1978)).

When a plaintiff takes a voluntary dismissal, "[t]he effect is to remove completely from the court's consideration the power to enter an order, equivalent in all respects to a deprivation of 'jurisdiction.'" Randle, 360 So. 2d at 69. See also Miller v. Fortune Ins. Co., 484 So. 2d 1221, 1223 (Fla. 1986). However, a court may retain jurisdiction to decide matters collateral to a case, such as attorney's fees. See MacBain v. Bowling, 374 So. 2d 75, 76 (Fla. Dist. Ct. App. 1979); Tampa Letter Carriers, Inc. v. Mack, 649 So. 2d 890, 891 (Fla. Dist. Ct. App. 1995). A voluntary dismissal, therefore, immediately divests the trial court of jurisdiction to decide the case at hand, even though the court's determination of a collateral matter may turn on an examination of the merits of the case. The award of attorney's fees is a collateral order of the circuit court. It does not have the effect of placing restrictions on the voluntary dismissal, an action for which the circuit court would have no jurisdiction.

Florida courts have long recognized a plaintiff's absolute right to a voluntary dismissal without prejudice, even when the trial judge has examined the merits of the case and announced an intention to direct a verdict for the defendant. See Fears v. Lunsford, 314 So. 2d 578 (Fla. 1975). See also Freeman v. Mintz, 523 So. 2d 606, 609 (Fla. Dist. Ct. App. 1988); Jeffrey C. Regan, Note, Plaintiffs' Absolute Right to Voluntary Dismissal: Legitimate Right or Abuse of Judicial Process?

7

36 U. Fla. L. Rev. 118 (1984). To treat the state court's award of attorney's fees in this case as a final adjudication on the merits, and therefore res judicata to this federal proceeding, would undermine the purposes of the voluntary dismissal rule.[4] Ergas' motion to dismiss the appeal is therefore denied. Ergas' motion for attorney's fees is denied for the same reason. Each party will bear its own costs. We proceed to the merits of the case.

*Western Group's Right to Sue Ergas on the Wraparound Note*

*1. Standard of Review*

Our review of a trial court's grant of summary judgment is plenary.[5] Elan Pharmaceutical Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372 (11th Cir. 1998); Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). We apply the same standard applied by the district court. Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "In reviewing a motion for summary judgment, the court must consider all the evidence in the light most favorable to the non-movant. Earley v. Champion Int'l. Corp., 907 F.2d

---

[4]  We find the United States Supreme Court case of Cooter & Gell v. Hartmarx, 110 S.Ct. 2447 (1990), to be instructive. In Cooter & Gell, the Supreme Court found that, although the federal courts have jurisdiction to decide a Rule 11 motion after a voluntary dismissal, that determination does not have preclusive effects against a later suit. Id. at 2456 ("Even if a district court indicated that a complaint was not legally tenable or factually well founded for Rule 11 purposes, the resulting Rule 11 sanction would nevertheless not preclude the refiling of a complaint.").

[5]  Ergas characterizes the district court's order as dismissal for failure to state a claim, but the district court's order was clearly a grant of summary judgment. In its order, the district court states: "I have determined to conclude the case pursuant to Rule 56. … There are no genuine issues of material fact presented by the record. Judgment for Defendant will be entered by separate order."

1077, 1080 (11th Cir. 1990). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368-69 (11th Cir. 1982)." Kopleowitz v. Home Ins. Co., 977 F. Supp. 1179, 1184-1185 (S.D. Fla. 1997).

*2. Contract Interpretation*

The Sellers/Syndicator security agreement provides that any disputes will be resolved under the law of the state of New York. Thus, our analysis will be guided by New York law.

Under New York law, "[w]hether an agreement is ambiguous is a question of law for the courts (see, Van Wagner Adv. Corp. v. S & M Enters., 67 N.Y.2d 186, 191, 501 N.Y.S.2d 628, 492 N.E.2d 756). Ambiguity is determined by looking within the four corners of the document, not to outside sources (see, W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162-163, 565 N.Y.S.2d 440, 566 N.E.2d 639). And in deciding whether an agreement is ambiguous courts

> 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought'

(William C. Atwater & Co., Inc. v. Panama R.R. Co., 246 N.Y. 519, 524, 159 N.E. 418)." Kass v. Kass, 696 N.E.2d 174, 180-181 (N.Y. 1998).

The parties disagree about the meaning of the parenthetical provision in paragraph 1 of the Sellers/Syndicator security agreement:

> Debtor shall, and hereby does, grant, convey, assign, pledge and transfer to Secured Party, a purchase money security interest in and to the Properties and the [Wraparound] Note (except that Secured Party shall not have the right to sue the Limited Partners or General Partners of the Partnership personally thereon other than to the extent of payments made to them by the Partnership)

9

(emphasis added). Read in isolation, this parenthetical provision appears to be a simple covenant by Western Group not to sue the partners of Partnership on the Wraparound Note. This is the reading of the phrase that the district court adopted and that Appellee Ergas urges on appeal.

Appellant Western Group, however, argues that the intended meaning of the phrase can only be derived by viewing the parenthetical language in the context of the Security Agreement as a whole and the intended effect of the transactions underlying the Agreement. Western Group argues that, viewed in context, the parenthetical language applied only while the Wraparound Note was held by the Syndicator and pledged to the Sellers; once Western Group purchased the Syndicator's note at the foreclosure sale, the restriction on suing the partners no longer applied. Western Group argues that the meaning given the parenthetical phrase by the district court would have been contrary to the interests of both the Sellers and the limited partners, since the Sellers would have lost effective security for payment for the nursery properties, and the partners would have lost the tax benefits that came from their investment's at-risk status.

As the New York Court of Appeals recently stated, "in deciding whether an agreement is ambiguous courts 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed.'" Kass v. Kass, 696 N.E.2d at 180 (quoting William C. Atwater & Co., Inc. v. Panama R.R. Co., 159 N.E. 418, 419 (N.Y. 1927)). See also RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."). We conclude that the parenthetical phrase at issue is ambiguous when viewed in the context of the security agreement as a whole and in the context of the transaction of which it is a part.

It is true, as Ergas argues, that the language of the parenthetical is unqualified; paragraph 1

10

of the security agreement nowhere states that the limitation applies only for a limited time or under limited circumstances. However, it is also true, as Western Group argues, that construing the parenthetical as an absolute bar to suit against the limited partners under the Wraparound Note conflicts with paragraph 5 of the security agreement (reserving to Sellers all of the remedies available to a secured party), with the penultimate paragraph of the Wraparound Note (stating that "each limited partner of the [Partnership] shall be personally liable to the extent of $260,000 per unit of Limited Partnership interest"), and apparently with the purposes of both the Sellers and the limited partners in entering into the transaction (since it would limit the Sellers' ability to enforce payment of their promissory note and would limit the partners' tax benefits flowing from their investment). The language at issue is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sayers v. Rochester Telephone Corp., 7 F.3d 1091, 1095 (2nd Cir. 1993). It is therefore ambiguous as a matter of law.

"[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." Eden Music Corp. v. Times Square Music Publications Co., 514 N.Y.S.2d 3, 5 (N.Y. App. Div. 1987). The district court erred when it held that this case presents no genuine issue of material fact.

The meaning of an ambiguous contract term is an issue of fact. Eden Music Corp., 514 N.Y.S.2d at 5. An issue of fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985). Here, the meaning of

11

the parenthetical phrase at issue is "material," since Western Group's very right to bring suit against Ergas hinges on the meaning given to the phrase.

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The meaning of the phrase at issue here is a "genuine" issue, since the nonmoving party presented substantial evidence to support its construction of the phrase.[6]

Western Group points to affidavits that it filed during litigation of the second amended complaint. These affidavits provide evidence that support Western Group's interpretation of the disputed phrase. In these affidavits, Tyrone Kindor and Joseph Tyler, two of the Sellers, attest that they intended and understood the disputed language only to apply while the Wraparound Note was pledged to the Sellers, and not after foreclosure. In addition, Western Group points to the affidavit of Henry Singer, attorney for the Sellers, who participated in drafting the parenthetical language, stating that both parties to the Sellers/Syndicator security agreement understood the limitation only to apply when the Wraparound Note was pledged to the Sellers, not after foreclosure.

"New York follows the common law rule that, '[i]n interpreting a contract, the intent of the parties governs,' and therefore '[a] contract should be construed so as to give full meaning and effect to all of its provisions.'" PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2nd Cir. 1996) (quoting American Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990)). Thus, the affidavits presented by the Sellers are substantial evidence to support their construction

_____

[6]  Of course, "[t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). We assume without deciding that Ergas met his initial burden of production.

of the disputed phrase.

Under New York law, a contract should be interpreted to effect the intentions of the parties. PaineWebber, 81 F.3d at 1199. The evidence presented by Western Group is sufficient that a reasonable jury could have found that the parties intended the parenthetical language to mean what Western Group has asserted. The district court therefore erred in granting summary judgment to Ergas.

The district court, in granting summary judgment, improperly weighed the evidence and chose between competing interpretations of the disputed contract term. The proper interpretation of the parenthetical phrase presents an issue of fact to be decided at trial. We therefore reverse the district court's grant of summary judgment to Ergas and remand for appropriate action consistent with this opinion.

REVERSED AND REMANDED.