## WESTERN GROUP NURSERIES, INC., et al., Plaintiffs,

### v.

## Martin ERGAS, et al., Defendants.

### No. 90–1606–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 4, 2002.

---

Joel D. Eaton, Esq., Podhurst, Orseck, et al., Miami, FL, Donald A. Chase, Esq., Morrison, Cohen, Singer & Weinstein, New York City, Anthony R. Lucia, Esq., Pheonix, AZ, Howard Kelly Coates, Jr., Esq., Proskauer Rose, Boca Raton, FL, Samuel A. Abady, Esq., New York City, for Plaintiffs.

Neil J. Berman, Esq., Berman, Rennert, Vogel & Mandler, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment, filed June 6, 2000 and the Defendant's Motion for Summary Judgment Based on Fed.R.Civ.P. 41, filed July 10, 2000.

#### Background

In 1984, thirteen Arizona nursery owners agreed to sell their nursery businesses to World Nurseries, Inc. ("World") which apparently thought that it could use the nursery assets to create a tax shelter for other businesses. Of the $ 22.1 million purchase price, $ 3 million was to be paid in cash, $ 17 million pursuant to a promissory note from World, and the remaining $ 2.1 million was contingent on the sale of certain nursery stock.

In a separate transaction, World immediately sold the nursery assets (and accompanying tax benefits) to a limited partnership calling itself Arizona World Nurseries, ("Arizona World") for $ 33 mil-

lion. Arizona World, paid $ 6.57 million in cash and issued a promissory note for the remaining $ 26.43 million the note itself was nonrecourse as to the partnership, however, the partners themselves were liable (to World) for up to $260,000 for each ($100,000) unit of the partnership purchased. To secure the promissory note, Arizona World granted World a purchase money security interest (PMSI) in the nursery assets. World, in turn, conveyed the PMSI to the thirteen nursery owners.

After barely a year, Arizona World was unable to make payments on the promissory note to World, which meant that World could not pay its own promissory note to the thirteen nursery owners. So the nursery owners, represented by agent Western United Nurseries, Inc. (hereinafter "Western United"), filed suit in Arizona state court and obtained a judgment against World in October 1986.

Two months later, in December 1986, Western United assigned part of its judgment to a newly formed entity comprised, in part, by some of the original thirteen nursery owners-this new entity called itself Western Group Nurseries (hereinafter WGN). WGN bid at the sheriff's sale of World's collateral and purchased the promissory note (between World and Arizona World). Since that time WGN has sought the assistance of this Court to collect payment for the note.

In the proceedings presently before the court, WGN sues Martin Ergas ("Ergas"), a limited partner of the tax shelter partnership Arizona World, L.P., to force him to pay his pro rata share of a promissory note entered into by the partnership.

### Summary Judgment Standard

Rule 56(C) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only where the moving party is entitled to judgment as a matter of law. A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party who moves for summary judgment bears the initial burden "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). A court must view the evidence presented in a light most favorable to the non-moving party.

However, once the moving party meets his initial burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608. The non-moving party may not rest upon mere allegations or denials in his pleadings, but must set forth specific facts, through affidavits or the other forms of evidence provided for by the rules. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Essentially, "the inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. With this standard in mind, we address the Defendant's Motions for Summary Judgment.

### Defendant's Motions for Summary Judgment

In the first motion, Ergas argues that Arizona law determines the appropriate

statute of limitations for filing claims. According to Ergas, since Western United and WGN (its predecessor in interest) could have filed suit in February 1986, this action (brought in July 1990) is time barred by Arizona's four-year statute of limitations.

WGN's response is two-fold: First WGN urges that the six-year New York statute of limitations applies; second, WGN asserts that the cause of action actually accrued in November 1986 (not February 1986), thus even under Arizona law, it would not be time barred. Ergas replies that WGN's judicial pleadings collaterally estop it from challenging either choice of law, or accrual of the action.

In the second motion, Ergas argues that the pending action is barred by Rule 41(a)(1) of the Federal Rules of Civil Procedure which states in relevant part: "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." Fed.R.Civ.P. 41(a)(1).

WGN acknowledges prior dismissals, but raises the following four defenses: (1) the Eleventh Circuit decided that the Florida state court proceeding was not an adjudication on the merits; (2) the 41(a)(1) defense was waived; (3) WGN is not the successor in interest to the nursery owners; and (4) the voluntary dismissal of the Arizona state court proceedings was made by the secured party to the note, whereas the voluntary dismissal of the Florida state proceedings was made by the owner of the partnership note.

### Analysis

I. *Statute of Limitations*

██ The Defendant argues that the Plaintiff's claims are barred by the Arizona, four-year statute of limitations. The Plaintiff argues that New York's six-year statute of limitations applies because the agreement which is the subject of this suit includes a choice-of-law provision selecting New York law. The Court agrees with the Plaintiff.

██ In order to assess the validity of this claim, the Court must first decide the choice of law question. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Florida rules, statutes of limitations are considered substantive in nature. *See Fulton County Adm'r v. Sullivan*, 753 So.2d 549, 553 (Fla. 1999); *Merkle v. Robinson*, 737 So.2d 540 (Fla.1999). Moreover, under Florida law, a choice of law provision "functions to supply a rule of decision for the *substantive* rights of the parties." *Atlantic Associates Ltd. v. Birken*, 610 So.2d 732 (Fla.App. 1992) (emphasis added). Therefore, under Florida choice of law rules, a choice of law clause selecting the application of New York law will generally include the application of New York's statute of limitations.

██ Generally, Florida enforces choice-of-law provisions as to contractual claims unless the law of the chosen forum contravenes strong public policy. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 311 (Fla. 2000). Additionally, the party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof. *Id.* Neither party has argued that the choice-of-law clause selecting New York laws is invalid as violating public policy. Therefore, the choice of law clause would be presumptively valid.

WGN argues in this case that the partnership note was subject to a choice of law provision selecting New York law, and

therefore New York law should govern the statute of limitations issue.[1] (Pl's. Mem. Opp'n Summ. J. at 3–4) WGN draws the Court's attention to a recent order by the Arizona District Court based on Plaintiff's suit against a different limited partner. *See In re: Western United Nurseries, Inc. v. The Estate of Richard R. Adams* (the "Arizona Opinion"). The Arizona Court held that while the New York choice of law clause was not expressly contained in the partnership note, it was incorporated by reference and therefore the New York statute of limitations was applicable. *Id.* The Plaintiff argues that the same argument applies against this Defendant.

This Court agrees with the reasoning of the Arizona opinion: the New York Choice of law clause was incorporated by reference into the partnership note by the terms "issued pursuant to and entitled to the benefits of" the purchase agreement and the security agreement. *Id.* at 11; *see also Western Group Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1359 (11th Cir.1999) ("The Sellers/Syndicator security agreement provides that any disputes will be resolved under the law of the state of New York. Thus our analysis will be guided by New York law.")

In the Defendant's Motion for Summary Judgment, Mr. Ergas makes no mention of any choice of law provision. It is not until the Plaintiff's Response that the choice of law provision is presented to the Court. In the Defendant's Reply, Mr. Ergas spends only two pages on the issue. In those two pages, the Defendant appears to argue that the Court should ignore the choice of law clause and apply the Arizona statute of limitations. The Defendant, however, does not present the Court with any argument, either legal or factual, as to why the choice of law clause does not apply and why the Arizona Opinion is incorrect.[2] Likewise, the Defendant does not argue that Florida Courts, when faced with a choice of law provision selecting New York law, would nonetheless apply the statute of limitations of a different state. Instead, the Defendant's sole argument is that the Plaintiff is estopped from arguing that the New York statute of limitations apply, because in the Arizona case it argued that the Arizona statute of limitations applies.

■ The Defendant's sole support for this proposition is Fed. R. Civ. P 11(b). First, even if Rule 11 applied in this situation, which it does not, any sanction the Court might impose is discretionary. *See Id.* at § (c). Secondly, in order for the Defendant to raise a Rule 11 issue, it must do so by motion. *See Id.* at § (c)(1)(A) However, as alluded to earlier, the Plaintiff has not violated Rule 11. The proposition the Defendant is asserting is misplaced. Essentially, the Defendant is arguing that if a party makes an argument before a court and losses that argument, the party must continue to make the losing argument in every subse-

1. The Defendant rightly suggests that the Court failed to discuss the New York choice of law provision in its order dated May 18, 1995, however, the outcome of the order would have been the same, as the Court applied New York law regardless.

2. To the extent that the Defendant did contest that the New York choice of law provision was incorporated by reference, the interpretation of this ambiguity in the contract would be a contested issue of fact, preventing the

Court from granting summary judgment. *See e.g., Leo Eisenberg & Co., Inc. v. Payson*, 152 Ariz. 390, 393, 732 P.2d 1128, 1131 (Ariz. App. Div. 21987); *Ruttenberg v. Davidge Data Systems Corp.*, 215 A.D.2d 191, 626 N.Y.S.2d 174, 175 (N.Y.A.D. 1st Dept.1995); *Barclays American Mortg. Corp. v. Bank of Cent. Florida*, 629 So.2d 978 (Fla. 5th DCA 1993); *Atlantic Mut. Ins. Co. v. Metron Engineering and Const. Co.*, 83 F.3d 897 (7th Cir.1996).

quent litigation in which the issue arises. Not only would such litigation most likely be fruitless, but at some point it might become sanctionable.

The Defendant also seems to argue that the Plaintiff's Admissions in this case are inconsistent with its current argument that New York law applies. This is because, the Defendant believes that the Plaintiff's admissions show that the parties had a *more significant relationship* with Arizona rather than New York. However, if the agreement was effected by a choice of law provision, it is irrelevant with which state the parties had the more significant relationship. Therefore, there is no inconsistency.

Moreover, even if the Plaintiff's admissions were inconsistent, which they are not, they were submitted on May 30, 2000, a month before the Arizona Opinion was filed. Thus, it would not be problematic for the Plaintiff to reverse his position mid-lawsuit, in response to a change or clarification in the law. In fact, the Plaintiff would be required to change his position if the Arizona Opinion made his original argument frivolous. Thus, as the Defendant has presented no colorable argument as to why the New York statute of limitations should not apply, the Court will interpret the agreement consistently with the Arizona Opinion and find that the New York statute of limitations applies.

The parties do not dispute that the New York limitations period for actions based in contract is six years, nor do they contest that it contains no applicable tolling provisions. *See* N.Y. Civ. Prac. L & R. § 213

(McKinney 2000). Since, the Defendant argues that the Plaintiff filed within four and a half years of the time the cause of action accrued, the Plaintiff is not barred by the applicable statute of limitations. (Def.'s Mem. Supp. Summ. J. at 2). Thus, the Court must DENY summary judgment on the Defendant's first motion.[3]

## II. *Rule 41*

 In the second motion, Ergas argues that the pending action is barred by Rule 41(a)(1) of the Federal Rules of Civil Procedure which states in relevant part: "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim." Fed.R.Civ.P. 41(a)(1). This rule is known as the "two dismissal rule." The two dismissal rule does not bar a subsequent suit, but instead merely states that when the rule applies, the dismissal of the second suit operates as an adjudication on the merits; once there is an adjudication on the merits, it is the doctrine of res judicata which bars subsequent suits on the same cause of action. *See Olympia Mortgage Corp. v. Pugh*, 774 So.2d 863, 867 (Fla. 4th DCA 2000); *Microvote v. Casey*, 57 F.3d 1070 (6th Cir.1995) (quoting *Chadwick v. Barba Lou, Inc.*, 69 Ohio St.2d 222, 431 N.E.2d 660, 663 (1982); *Hammond v. J.C. Penney Co., Inc.*, 1998 WL 42285 at *2 (E.D.Pa.1998)). Federal courts will apply the law of the state in which they sit with respect to the doctrine of res judicata. *See Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir.1993), cert. denied, *Sinkfield v. Wesch*, 510 U.S. 1046,

---

**3.** Because the Court is unable to apply the Arizona statute of limitations as a matter of law, it is unnecessary to reach the question of whether the cause of action accrued within the four year Arizona statute of limitations. However, as no party has brought the Court's attention to any final judgment to which the date of the breach was a necessary component, collateral estoppel can not apply and the disputed factual question would most likely be better decided in trial.

114 S.Ct. 696, 126 L.Ed.2d 663 (1994); *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir.1992); *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir.1990); *McDonald v. Hillsborough County School Board*, 821 F.2d 1563, 1565 (11th Cir.1987); *Diaz v. Moore*, 861 F.Supp. 1041 (N.D.Fla. 1994).

■ Under Florida law, the doctrine of res judicata will not be invoked where it would work an injustice. *See Flesche v. Interstate Warehouse*, 411 So.2d 919, 924 (Fla. 1st DCA, 1982); 32 Fla. Jur 2d Judgments and Decrees § 129 (1994). This exception is well-rooted in the law of Florida. *See Flesche*, 411 So.2d at 924. "Stare decises and res adjudicata are perfectly sound doctrines...but they are governed by well-settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule." *Wallace v. Luxmoore*, 156 Fla. 725, 24 So.2d 302, 304 (1946). Moreover, "when a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation...Indeed, this very court, among others, has announced the salutary principle that the doctrine of res judicata should not be so rigidly applies as to defeat the ends of justice." *Universal Const. Co. v. City of Fort Lauderdale*, 68 So.2d 366, 369 (Fla.1953).

We find that the application of res judicata to the present case would work an injustice because: (1) Although the defense was always available to the Defendant, it was not raised in four dispositive motions and ten years of litigation; (2) the only reason the defense was not raised is that the Defendant did not realize it was available to him; (3) the policy reasons behind the two dismissal rule would not be served; (4) the two dismissal rule may not even be applicable since the Defendant's failure to raise the defense for ten years constitutes his consent to the voluntary dismissals.

### 1. The Plaintiff has been prejudiced in terms of costs and needless delay from the Defendant's failure to timely raise this argument.

This case was originally filed on July 9, 1990, more than ten years ago. The Defendant filed a motion to dismiss on October 1, 1990. In that motion the Defendant made no mention of the Rule 41 argument. The Defendant filed a second motion to dismiss on August 15, 1991. Again, the Defendant made no mention of the Rule 41 argument. The Defendant filed a third motion to dismiss on December 2, 1993. Still, the Defendant made no mention of the Rule 41 argument. On May 18, 1995, the Court dismissed the Plaintiff's case without granting leave to amend. The Plaintiff appealed to the Eleventh Circuit and the Court was reversed and the case remanded. On August 31, 1999, the Defendant filed an amended answer, which still failed to raise Rule 41 or Res Judicata. On June 6, 2000, the Defendant filed a Motion for Summary Judgment based on statute of limitations grounds. In that Motion the Defendant did not raise Rule 41. On July 10, 2000, the Defendant filed a Motion for Leave to File First Amended Answer to Second Amended Complaint. This was the first time the Defendant raised the Rule 41 defense. In other words, the Defendant waited for ten years and four dispositive motions to raise an argument which had been available to him since the filing of the complaint. Thus, the Plaintiff has been extremely prejudiced in terms of costs and needless delay from the Defendant's failure to timely raise this argument.

## 2. The Defendant has presented no good reason for his delay.

The Defendant explains his failure to raise the Rule 41 defense in one sentence: "In developing the case histories of the state court actions filed by plaintiffs and their affiliates in Arizona, in preparation for trial of this case on August 14, 2000, Ergas recalled that an action previously had been filed against him in Arizona and that this action was voluntarily dismissed on February 17, 1987." *See* Def. Martin Egras' Am. and Supp. Mot. For Leave to File First Am. Answer to Second Am. Compl. and Mem. In Supp. at ¶ 4. The Court interprets the Defendant to mean that his failure to raise the defense earlier was not because he thought it was improper to raise it in an earlier motion but because he simply did not see the issue until July of 2000 when he was preparing for trial. Then ten year, four motion delay would certainly be understandable if it resulted from the Plaintiff's failure to produce evidence, or from a recent change of the law. The fact that the Defendant, however, has presented the Court with no reasonable justification for such an extended delay contributes to the Court's finding that application of res judicata would be unjust under these circumstances.

## 3. The policy reasons behind the two dismissal rule and res judicata would not be served by its application in this case.

The purpose of the two dismissal rule is to prevent duplicative, wasteful and harassing litigation. *See TCW Special Credits v. FISHING VESSEL CHLOE Z*, 238 F.3d 431 (9th Cir.2000); *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724, 727 (9th Cir.1991); *Poloron Products, Inc. v. Lybrand Ross Bros. and Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y., 1975), rev'd on other grounds, 534 F.2d 1012 (2nd Cir.1976) (quoting *Robertshaw–Fulton Controls Co. v. Noma Elec. Corp.*, 10 F.R.D. 32 (D.Md.1950)). "It is universally accepted that the primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading... Where the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly." *Poloron Products Inc.*, 534 F.2d at 1017 (2nd Cir. 1976).

In the present case, both parties agree that only two dismissals are relevant for purposes of this motion. When the thirteen Arizona nursery owners sold their nursery in 1984, they obtained a security interest in the partnership note that was assumed by Ergas. The sellers brought suit against the entities to whom the nursery had been sold and were awarded a money judgment and the right to foreclose against the assets. One day before the foreclosure sale occurred, the sellers, as secured party on the partnership note sued the entities including Ergas, as a limited partner who assumed the note. WGN, a corporation formed by the sellers to purchase the partnership note in a foreclosure sale and then collect on the note, effectively purchased the note in the sale the next day. The following day, WGN, as owner of the note, sued the entities including Ergas. Because the sellers no longer had any interest in the note, they voluntarily dismissed the lawsuit they had filed as secured party. This was the first vol-

untary dismissal.[4] The Plaintiff provides no explanation as to why it voluntarily dismissed the second action, but it appears that it decided that it would be more advantageous to pursue the claim in federal rather than state court. *See* Pl.'s Resp. Mot. Summ. J. at 3–4.

While the Plaintiff admits that these two dismissals were voluntary as required by Rule 41, the Court does not find the first dismissal to be particularly duplicative, wasteful or harassing. Here, it was not the Plaintiff but the Defendant who may have been able to prevent 10 years of duplicative, wasteful and harassing litigation had he timely raised a Rule 41 defense. Thus, the purposes of Rule 41 would not be well served by applying the defense in this case.

■ Likewise, the purposes of res judicata would not be well served either. The purpose of res judicata is to (a) protect the defendant's interest in avoiding the burdens of twice defending a suit; and (b) to avoid unnecessary judicial waste. *See Arizona v. California*, 530 U.S. 392, 120 S.Ct. 2304, 2317, 147 L.Ed.2d 374 (holding that in some circumstances it is appropriate for the Court to raise res judicata *sua sponte*). In this case, any burden the Plaintiff may have placed on the Defendant is de minimus in relation to the burden the Defendant placed upon the Plaintiff and himself by failing to raise the two dismissal defense for ten years. Additionally, the Defendant was never forced to defend the suit the first two times and nothing was decided on the merits. *See Western Group Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1358–59 (11th Cir.1999). Moreover, judicial waste is not a serious concern here because the earlier two actions were voluntarily dismissed at the out-

set, and this Court is willing to hear the Plaintiff's case. Therefore, the policy behind res judicata would not be well served by its application in this case.

**4. The Defendant's failure to raise the defense for ten years constitutes his tacit consent to the voluntary dismissals.**

■ It is clear that the two dismissal rule does not apply where the defendant consents to one or more of the voluntary dismissals. *See Sutton Place Development Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 641 (7th Cir.1987); *Poloron Products, Inc.*, 534 F.2d at 1017; *Island Stevedoring, Inc. v. Barge CCBI*, 129 F.R.D. 430, 431 (D.P.R.1990). In *Sutton Place*, the Court found that "while appellee's counsel did not explicitly waive reliance on the 'two dismissal' rule, it is clear that he understood the reason for the appellants' course of action [in seeking voluntarily dismissal] and raised no objection to it." *Id.* Thus, the Court deemed the appellee's to have consented to the dismissal and therefore the Rule 41 defense did not apply. *Id.* While it is unclear in the present case whether the Defendant could have "objected" to the dismissals at the time at which the courts granted them, this Court deems that the Defendant effectively consented to the dismissals by failing to raise a Rule 41 defense in four dispositive motions over the course of 10 years of litigation.

For all of these reasons, this Court finds that to apply the doctrine of res judicata to this case would result in injustice and therefore declines to apply the doctrine.

Thus, having been advised in the premises, it is hereby ORDERED AND ADJUDGED that the Defendant's Motions

---

**4.** Because the Court finds that application of res judicata would result in injustice, it does not reach the issue of whether the Plaintiff in the action and the plaintiff in the first action are the "same" for purposes of Res Judicata.

for Summary Judgment are hereby DE-
NIED.